MICHAEL VON LOEWENFELDT (178665)
MVL@KERRWAGSTAFFE.COM
MICHAEL NG (237915)
MNG@KERRWAGSTAFFE.COM
**KERR & WAGSTAFFE LLP**
100 SPEAR STREET, SUITE 1800
SAN FRANCISCO, CA 94105–1528
TELEPHONE: (415) 371-8500
FAX: (415) 371-0500

JERUSALEM F. BELIGAN (211258)
JBELIGAN@GMAIL.COM
CHRIS L. CARNAKIS (219769)
CCARNAKIS@GMAIL.COM
**BELIGAN LAW FIRM, LLP**
20955 PATHFINDER ROAD, SUITE 100
DIAMOND BAR, CA 91765
TELEPHONE: (909) 843-6404
FAX: (909) 843-6350

ATTORNEYS FOR PLAINTIFFS
LEO DIAPO, DAVID LIBERTY, MATTHEW CATRICOLA,
RICK JAHSHAN, JASON HARROLD,
JUDITH JACQUES AND KAREN ABE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| LEO DIAPO, DAVID LIBERTY, MATTHEW CATRICOLA, RICK JAHSHAN, JASON HARROLD, JUDITH JACQUES and KAREN ABE, on behalf of themselves and those similarly situated,<br><br>       Plaintiffs,<br><br>    vs.<br><br>FLIGHT CENTRE USA, INC., a Delaware corporation; and DOES 1-25,<br><br>       Defendants. | Case No. CV 09-4790 PSG (RZX)<br><br>NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF; PROPOSED NOTICE  [Ex. A]<br><br>DATE:     June 21, 2010<br>TIME:     1:30 p.m.<br>PLACE:  Courtroom 880<br><br>Honorable Philip S. Gutierrez |

# <u>TABLE OF CONTENTS</u>

*Page*

I.    INTRODUCTION ................................................................................2

II.   BACKGROUND ................................................................................3

    A.    Factual Background and Procedural History ...........................3

    B.    The Proposed Settlement ..........................................................5

        1.    The Settlement Class .......................................................5

        2.    Monetary Relief ...............................................................5

        3.    Cash Payments to the Class .............................................6

        4.    Class Representative Enhancements ...............................7

        5.    Attorneys' Fees and Costs ..............................................7

        6.    Release .............................................................................7

III.  ANALYSIS .......................................................................................8

    A.    The Proposed Class Should Be Conditionally Certified ....................8

        1.    Description of the Class ...................................................8

        2.    The Proposed Class Meets the Certification Requirements of Rule 23(a) and (b) for Settlement Purposes ...........................................................................8

            a)    Rule 23(a)(1)—Numerosity: ...............................10

            b)    Rule 23(a)(2)—Commonality: ...........................10

            c)    Rule 23(a)(3)—Typicality: .................................11

            d)    Rule 23(a)(4)—Adequacy of Representation: ...................12

            e)    Rule 23(b)(3)—Predominance and Superiority: ...............12

    B.    Preliminary Settlement Approval is the Proper First Step Toward a Final Resolution of this Action .........................................13

    C.    Standard for Preliminary Settlement Approval ................................14

    D.    The Court Should Grant Preliminary Approval ................................17

KERR
&
WAGSTAFFE
LLP

1. The Settlement Has No "Obvious Deficiencies" and Falls Within the Range of Possible Approval. ...............................17

2. The Settlement is the Product of Serious, Informed and Non-Collusive Negotiations. ....................................18

3. The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class, Nor Does it Provide Excessive Compensation to Counsel. ...............................................................20

E. The Proposed Nature and Method of Class Notice are Appropriate. ....................................................21

1. The Proposed Method of Notice Satisfies Due Process. ........21

2. The Proposed Notice is Accurate and Informative. ...............21

F. Scheduling a Final Approval Hearing is Appropriate. ....................22

IV. CONCLUSION ...........................................................23

KERR
&
WAGSTAFFE
LLP

# <u>TABLE OF CONTENTS</u>

*Page*

## <u>*Cases*</u>

<u>Amchem Prods., Inc. v. Windsor,</u>
      521 U.S. 591 (1997) .................................................................. 8, 9

<u>Armstrong v. Bd. of Sch. Directors,</u>
      616 F.2d 305 (7th Cir. 1980) ................................................. 15, 17

<u>Berry v. School Dist. of City of Benton Harbor,</u>
      184 F.R.D. 93 (W.D. Mich. 1998) ............................................. 15

<u>Bittinger v. Tecumseh Prods. Co.,</u>
      123 F.3d 877 (6th Cir. 1997) ...................................................... 10

<u>Blackie v. Barrack,</u>
      524 F.2d 891 (9th Cir. 1975) ........................................................ 9

<u>Boyd v. Bechtel Corp.,</u>
      485 F. Supp. 610 (N.D. Cal. 1979) ............................................. 21

<u>Detroit v. Grinnell Corp.,</u>
      495 F.2d 448 (2d Cir. 1974) ........................................................ 15

<u>Devlin v. Scardelletti,</u>
      536 U.S. 1 (2002) ......................................................................... 21

<u>Dukes v. Wal-mart, Inc.,</u>
      2010 WL 1644259 (9th Cir. April 26, 2010) ......................... 11, 12

<u>Entin v. Barg,</u>
      412 F. Supp. 508 (E.D. Pa. 1976) ............................................... 17

<u>Esler v. Northrop Corp.,</u>
      86 F.R.D. 20 (W.D. Mo. 1979) ................................................... 10

<u>Felzen v. Andreas,</u>
      134 F.3d 873 (7th Cir. 1998) ...................................................... 15

<u>Fisher Bros. v. Cambridge-Lee Indus., Inc.,</u>
      630 F. Supp. 482 (E.D. Pa. 1985) ............................................... 17

<u>Girsh v. Jepson,</u>
      521 F.2d 153 (3d Cir. 1975) .......................................................... 9

<u>Goldberger v. Integrated Resources, Inc.,</u>
      209 F.3d 43 (2d Cir. 2000) .......................................................... 16

<u>Gottleib v. Wiles,</u>
      11 F.3d 1004 (10th Cir. 1993) .................................................... 21

KERR
&
WAGSTAFFE
LLP

Grunin v. Int'l House of Pancakes,
513 F.2d 114 (8th Cir. 1975) ........................................................................ 16

In re Beef Indus. Antitrust Litig.,
607 F.2d 167 (2d Cir. 1979) .......................................................................... 9

In re Four Seasons Sec. Laws Litig.,
58 F.R.D. 19 (W.D. Okla. 1972) .................................................................. 18

In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,
55 F.3d 768 (3d Cir. 1995) ............................................................................ 9

In re Mid-Atlantic Toyota Antitrust Litig.,
564 F. Supp. 1379 (D. Md. 1983) ................................................................ 15

In re Tableware Antitrust Litig.,
484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................... 16

James v. City of Dallas,
254 F.3d 551 (5th Cir. 2001) ....................................................................... 10

Liebman v. J.W. Petersen Coal & Oil Co.,
73 F.R.D. 531 (N.D. Ill. 1973) .................................................................... 15

Officers for Justice v. Civil Service Comm'n,
688 F.2d 615 (9th Cir. 1982) ............................................................. 13, 15, 17

Philadelphia Housing Auth. v. Am. Radiator & Standard Sanitary Corp.,
323 F. Supp. 364 (E.D. Pa. 1970) ............................................................... 15

Protective Comm. for Indep. Stockholders v. Anderson,
390 U.S. 414 (1968) ..................................................................................... 16

Reed v. Gen. Motors Corp.,
703 F.2d 170 (5th Cir. 1983) ....................................................................... 16

Scholtisek v. Eldre Corp.,
229 F.R.D. 381 (W.D.N.Y. 2005) ............................................................... 11

Ventura v. New York City Health and Hosp., Inc.,
125 F.R.D. 595 (S.D.N.Y. 1989) ................................................................ 11

Vizcaino v. U.S. Dist. Court for W. Dist. of Wash.,
173 F.3d 713 (9th Cir. 1999) ....................................................................... 10

Wang v. Chinese Daily News,
231 F.R.D. 602 (C.D. Cal. 2005) ................................................. 10, 11, 12, 13

Weinberger v. Kendrick,
698 F.2d 61 (2d Cir. 1982) .................................................................. 9, 16, 21

Whitford v. First Nationwide Bank,
147 F.R.D. 135 (W.D. Ky. 1992) ................................................... 14, 15, 16

KERR
&
WAGSTAFFE
LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

### ***Statutes***

2  California Code of Civil Procedure § 1500 ............................................................. 6

3  California Code of Civil Procedure § 1513 ............................................................. 6

4  Fed. Rule Civ. Proc. 23 ................................................................................. passim

5

### ***Other Authorities***

6  4 H. Newberg & A. Conte, <u>Newberg on Class Actions</u>

7      (4th ed. 2002) ....................................................................... 8, 9, 15, 16

8  5 James Wm. Moore et al., <u>Moore's Federal Practice</u>,
        (3d ed. 1999) ..................................................................................... 10

9  Federal Judicial Center, <u>Manual for Complex Litigation</u>

10      (4th ed. 2004) ........................................................... 8, 14, 21, 22

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NOTICE OF MOTION AND MOTION

TO THE COURT AND ALL COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on Monday, June 21, 2010 at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 880 of the above-captioned court at 255 East Temple Street, Los Angeles, CA 90012, Plaintiffs Leo Diapo, David Liberty, Matthew Catricola, Rick Jahshan, Jason Harrold, Judith Jacques, and Karen Abe, on behalf of the stipulated settlement class, will and hereby do move the Court for an order certifying the settlement class, granting preliminary approval of the settlement reached by the parties, directing Notice to the absent class members, and setting a schedule for final approval.

This Motion is made pursuant to Federal Rule of Civil Procedure 23(e) and is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, Complaint on file, the Declarations of Leo Diapo, David Liberty, Matthew Catricola, Rick Jahshan, Jason Harrold, Judith Jacques, Karen Abe, Michael von Loewenfeldt, Michael Ng, and Chris Carnakis filed herewith, the proposed Class Action Settlement Agreement and proposed Notice filed herewith; the other records and files in this action; and such other matters as may be properly presented at or before the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place during the negotiations of the settlement documents over the past several months.

KERR
&
WAGSTAFFE
LLP

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

This is a wage and hour class action challenging the overtime, meal and rest break, expense reimbursement, and unlawful deduction policies of defendant Flight Centre USA, Inc.  ("Flight Centre USA").  Plaintiffs filed this action seeking to represent a class of Flight Centre USA employees whom plaintiffs allege are not exempt from overtime laws, with job titles of travel consultant, account manager, future team leader, team leader, and business development manager.  Flight Centre USA denies all of Plaintiffs' claims as to liability and damages as well as Plaintiffs' class allegations.

On December 17, 2009, after discovery and exchange of information, the parties to this Action engaged in mediation before noted employment law mediator Mark Rudy.  Those negotiations continued after the mediation, and culminated in the proposed settlement, which will resolve claims on behalf of a 258 member class as described below.  Pursuant to the proposed settlement, Flight Centre USA has agreed to pay claims under a gross settlement fund not to exceed $1.8 million, including administration, class representative incentive payments, attorneys' fees, and costs in order to settle all of the claims raised in this action.

Class Counsel believe that the $1.8 million settlement, which was the product of serious, informed, non-collusive negotiations, is fair and reasonable. Plaintiffs therefore move for an order: (1) conditionally certifying a settlement class; (2) preliminarily approving the class action settlement embodied in the Class Action Settlement Agreement (the "Settlement Agreement"); (3) approving the

Notice to the Class (attached hereto as Exhibit "A"); and (4) setting the Final Approval Hearing.

## II.   BACKGROUND

### A.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs Leo Diapo, David Liberty, Matthew Catricola, Rick Jahshan, Jason Harrold, Judith Jacques and Karen Abe (collectively, "Plaintiffs") brought this action on behalf of themselves and a class consisting of Flight Centre USA's California sales employees during the relevant time period.  The company uses various titles for those employees depending on their positions.  Most are called "Travel Consultants," but the company calls some "Team Leaders," "Future Team Leaders," "Account Managers,"  and/or "Business Development Manager."  The class consists of 258 people.  (Ng Decl. ¶ 9.)   Plaintiffs filed this action in state court on June 3, 2009, alleging causes of action for failure to pay overtime, failure to pay meal and rest break wages, waiting time penalties, failure to reimburse business expenses, wage statement violations, unlawful deductions, and unfair business practices relating to the above claims.  (Complaint.)

On July 1, 2009, Flight Centre USA answered the Complaint, generally denying plaintiffs' allegations and raising 37 affirmative defenses.  (Answer.)  On July 2, 2009, Flight Centre USA removed the action to this Court.  (Docket #1.)   A trial date was set by the Court for October 12, 2010.  (Docket #23.)  A First Amended Complaint was filed on April 12, 2010, adding a Private Attorney General Act ("PAGA") claim after state remedies for such were exhausted. (Docket # 33.)

KERR
&
WAGSTAFFE
LLP

The parties engaged in extensive discovery in this case.  After the required conference between counsel, the parties exchanged initial disclosures.  Plaintiffs also propounded 304 requests for production of documents, 32 requests for admission, and 23 interrogatories on Flight Centre USA.  (Ng Decl. ¶ 7.)  Flight Centre USA responded to this discovery, producing much of what was requested including detailed electronic records (with identities redacted) sufficient to allow plaintiffs' counsel to analyze class size and model damages.  (Id.)  Plaintiffs analyzed these documents extensively to determine Flight Centre USA's degree of liability and its potential exposure to damages.

Seeking to resolve the matters in dispute before engaging in protracted litigation, the parties engaged in arms-length mediation before noted California employment law expert and mediator Mark Rudy on December 17, 2009.  (Ng Decl. ¶ 10.)  During the mediation, the parties discussed all aspects of the case, including the risks of litigation and risks to both Parties of proceeding with a motion for class certification and in continuing discovery.  Flight Centre USA shared information relating to its own damage model, which we are informed and believe was prepared with the assistance of a damages consultant who was experienced in analyzing data for wage and hour class action lawsuits.  The parties reached an agreement shortly following the mediation and subsequently entered into the written Settlement Agreement presented to the Court herewith.  (von Loewenfeldt Decl. Ex. A.)

KERR
&
WAGSTAFFE
LLP

– 4 –

### B.    THE PROPOSED SETTLEMENT

The Settlement Agreement reached by the parties was filed with the Court along with this motion as Exhibit A to the Declaration of Michael von Loewenfeldt.  The terms, generally,[1] are as follows:

#### 1.    The Settlement Class

The Settlement Class is defined as all persons employed by Flight Centre USA in the State of California, at any time between June 3, 2005 and January 31, 2010, as Travel Consultants, Account Managers, Future Team Leaders, Team Leaders and Business Development Managers, or in any other job title or position whose primary duties were the sale of goods and services.  (Settlement Agreement ¶ 1.28.)

#### 2.    Monetary Relief

Flight Centre USA has agreed to a Gross Settlement Fund of $1,800,000, which includes payments to the Class, attorneys fees and costs, penalties to the State of California,[2] and any incentive payments awarded to the Representative Plaintiffs.  (Settlement Agreement ¶ 3.1.)  Flight Centre USA has further agreed that it shall pay no less than 60% of the potential Net Settlement Fund (the Gross Settlement Fund less fees, costs, state penalties, and incentive payments), irrespective of the number of claims made.  (Settlement Agreement ¶ 3.2.)

---

[1]    For convenience, the key terms of the settlement agreement are outlined below.  Obviously the summary contained in this motion does not operate to amend or modify the formal terms of the settlement agreement.

[2]    The parties have agreed to a penalty under the Private Attorney Generals Act ("PAGA") of $50,000.  (Settlement Agreement ¶ 2.)

KERR
& 
WAGSTAFFE
LLP

### 3.   Cash Payments to the Class

The Net Settlement Fund will be distributed to Class members who do not opt out and who submit timely claims. (Settlement Agreement ¶ 3.2.)  85% of the Net Settlement Fund shall be attributed to workweeks where class members worked in the positions of Travel Consultant, Account Manager, or Future Team Leader, and 15% of the Net Settlement Fund shall be attributed to workweeks where class members worked in the positions of Team Leader or Business Development Manager.  (Id. ¶ 6.4.)  The Net Settlement Fund shall be distributed based on each class members' proportional share of workweeks in each relevant position.  (Id. ¶¶ 3.2.1, 6.4.)  One-third of the settlement payments shall be allocated as wages, one-third as expense reimbursement, and one-third as interest and penalties.  (Id. ¶ 6.4.4.)

Class Members who return a timely Claim Form, and are thus eligible for payment, are protected in the event they fail to cash the checks sent to them because said sums shall be treated as unclaimed property pursuant to California's Unclaimed Property Law, Code of Civil Procedure section 1500 et seq., and specifically as unclaimed wages within the meaning of Code of Civil Procedure section 1513(g).  (Settlement Agreement ¶ 6.11.)[3]

---

[3]    Under California law, unclaimed property "escheats" to the State after one year; however, the term "escheat" is a misnomer because the property *never* becomes the property of the State, but is held in perpetuity for the property owner, who can search for and claim such property on a state run website.  See www.sco.ca.gov/col/ucp/faq/faq.shtml#reclaim01 for the State Controller's official description of this procedure.

KERR
&
WAGSTAFFE
LLP

In addition to the amounts paid to the Class Members, Defendants have agreed to pay applicable employer tax contributions with respect to the one-third wage settlement payments to Class Member (Settlement Agreement ¶ 6.5).

### 4.   Class Representative Enhancements

The parties have agreed that each Class Representative may petition the Court for incentive payments of five thousand dollars ($5,000) to be paid from the Gross Settlement Fund to compensate them for their participation as Class Representative.  (Settlement Agreement ¶ 8.1.)  The settlement is not contingent on approval of any specific amount of incentive payments.  (Id.)

### 5.   Attorneys' Fees and Costs

The Settlement provides for an award of reasonable attorneys' fees and costs of up to twenty-five percent (25%) of the $1.8 million settlement to be deducted from the Class' Gross Settlement Fund.  (Settlement Agreement ¶ 7.1.)  The Settlement also provides for reimbursement of Class Counsel's actual reasonable costs up to $95,000 (which number includes the cost of administration of the settlement).  (Id. ¶¶ 5.2 and 7.2.)  Class Counsel will make their specific fee and cost request in connection with the final approval hearing.

### 6.   Release

The Settlement Class is releasing the following claims with respect to Flight Centre USA and its related Released Persons as defined by the Settlement Agreement:  "all claims under state, federal or local law arising out of or related to allegations in the operative complaint of the LAWSUIT, including but not limited to all claims for alleged violation of Labor Code sections 201-204, 221, 226, 226.7, 510, 2699-2699.5 and 2802; Business and Professions Code section 17200 et seq.

and claims arising from such Labor Code violations, during the CLASS PERIOD."
(Settlement Agreement ¶¶ 1.22, 1.23, 4.1.)  In addition to the class-wide releases,
the Representative Plaintiffs are all executing full general releases as well as an
agreement not to seek re-employment.  (Id. ¶¶ 4.2, 4.3.)

## III.   ANALYSIS

### A.   THE PROPOSED CLASS SHOULD BE CONDITIONALLY CERTIFIED

#### 1.   Description of the Class

For purposes of the proposed settlement, and to facilitate notice to the
proposed class, the parties request that the Court provisionally certify a settlement
class as defined in the Class Action Settlement Agreement submitted herewith, to
include: all persons employed by Flight Centre USA in the State of California, at
any time between June 3, 2005 and January 31, 2010, as Travel Consultants,
Account Managers, Future Team Leaders, Team Leaders and Business
Development Managers, or in any other job title or position whose primary duties
were the sale of goods and services.  (Settlement Agreement ¶ 1.28.).  Based on
review of its employment and financial records, Flight Centre USA has determined
that there are 258 class members.  (Ng Decl. ¶ 9.)

#### 2.   The Proposed Class Meets the Certification Requirements of Rule 23(a) and (b) for Settlement Purposes

The Court has the authority to certify a provisional settlement class at the
time of preliminary approval.  See Amchem Prods., Inc. v. Windsor, 521 U.S. 591,
620-21 (1997); Federal Judicial Center, Manual for Complex Litigation § 21.312
(4th ed. 2004); 4 H. Newberg & A. Conte, Newberg on Class Actions § 11.27 (4th
ed. 2002).   That rule is consistent with the longstanding recognition of the benefits
of a certified settlement class.  See In re Gen. Motors Corp. Pick-Up Truck Fuel

Tank Prod. Liab. Litig., 55 F.3d 768, 786 (3d Cir. 1995) ("[M]any courts have indulged the stipulations of parties by establishing temporary classes for settlement purposes only."). Newberg § 11.27. The practical necessity of the device was noted by the Second Circuit in Weinberger v. Kendrick, 698 F.2d 61, 72 (2d Cir. 1982):

> "Temporary settlement classes have proved to be quite useful in resolving major class action disputes. . . . [M]ost courts have recognized their utility and have authorized the parties to seek to compromise their differences . . . ."

Id. at 72 (citations omitted); Girsh v. Jepson, 521 F.2d 153, 155 n.3 (3d Cir. 1975).

"The determination of a class . . . [is a] matter[] within the trial court's judicial discretion." In re Beef Indus. Antitrust Litig., 607 F.2d 167, 178 (2d Cir. 1979). In determining whether a class should be certified, the court is bound to take the substantive allegations of the complaint as true. Blackie v. Barrack, 524 F.2d 891, 901 n.17 (9th Cir. 1975). A proposed settlement class is still subject to the requirements of Federal Rule of Civil Procedure 23(a) and (b) which are "designed to protect absentees by blocking unwarranted or overbroad class definitions." Amchem, 521 U.S. at 620. However, "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, see Fed. Rule Civ. Proc. 23(b)(3)(D), for the proposal is that there be no trial." Id.

All of the factors established by Federal Rule of Civil Procedure are present in this case, making certification of a settlement class appropriate as set forth below.

KERR
&
WAGSTAFFE
LLP

a)      *Rule 23(a)(1)—Numerosity:*

There are 258 putative class members. That satisfies the Rule 23(a)(1) numerosity element.  Esler v. Northrop Corp., 86 F.R.D. 20, 34 (W.D. Mo. 1979) (classes of forty or more are generally certified); see 5 James Wm. Moore et al., Moore's Federal Practice, § 23.22 (3d ed. 1999) (recognizing general rule that forty or more class members establishes numerosity).

b)      *Rule 23(a)(2)—Commonality:*

The commonality preconditions of Rule 23(a)(2) are "construed permissively."  Wang v. Chinese Daily News, 231 F.R.D. 602, 607 (C.D. Cal. 2005).  The presence of simply one common issue whose resolution will affect all or significant number of the putative class members suffices to satisfy the commonality requirement.  James v. City of Dallas, 254 F.3d 551, 570 (5th Cir. 2001) (citations omitted); Bittinger v. Tecumseh Prods. Co., 123 F.3d 877, 884 (6th Cir. 1997) (citation omitted); see Vizcaino v. U.S. Dist. Court for W. Dist. of Wash., 173 F.3d 713, 722 (9th Cir. 1999) (defining a class of employees as linked by their common claim to have been denied benefits to which they were entitled as common law employees was proper) (citations omitted).  Here, Plaintiffs allege that Flight Centre USA has implemented and applied employment policies and practices to all class members through written contracts and policies implemented consistently at all of its California facilities, and that the application of those policies systematically deprives class members of lawful earnings. (Complaint ¶ 37.)  Thus, germane to all class members' claims are the common factual issues of (1) whether employees in the job classifications included in the class were exempt from overtime, (2) whether Flight Centre USA required class

members to bear unreimbursed business expenses, (3) whether Flight Centre USA provided and/or authorized and permitted appropriate meal and rest breaks to its employees; (4) whether Flight Centre USA failed to provide proper wage statements; and (5) whether Flight Centre USA's uniform practices constituted unlawful business practices under California law.  (Id.)  The corresponding legal questions concern whether such practices are lawful.  See Scholtisek v. Eldre Corp., 229 F.R.D. 381, 393 (W.D.N.Y. 2005).  Plaintiffs' claims exceed the minimum burden of establishing commonality, by presenting several common legal and factual questions relating to Flight Centre USA's practices and policies. As such, commonality is satisfied.

c)   *Rule 23(a)(3)—Typicality:*

Under this Rule's "permissive standards," the representative plaintiffs' claims are "typical" if they are "reasonably co-extensive with those of absent class members."  Dukes v. Wal-mart, Inc., ___ F.3d ___, 2010 WL 1644259 at *32 (9th Cir. April 26, 2010); Wang, 231 F.R.D. at 608.  The typicality requirement is satisfied if plaintiffs' claims arise from the same events or course of conduct that give rise to the claims of other class members and are based on the same legal theory.  Ventura v. New York City Health and Hosp., Inc., 125 F.R.D. 595, 600 (S.D.N.Y. 1989) (citation omitted).  In the present case, all of Plaintiffs' claims arise from a common source— Flight Centre USA's employment contract terms, policies and practices at its California facilities.  (Complaint ¶ 23.)  Furthermore, the claims of the Representative Plaintiffs and those of the putative class are based on identical legal theories.  Because Plaintiffs' claims rely on proving a course of conduct that extends beyond the circumstances unique to their claims, the

KERR
&
WAGSTAFFE
LLP

Plaintiffs' interests are aligned with those of the putative class.  (Ng Decl. ¶ 14; Diapo Decl. ¶ 5; Liberty Decl. ¶ 5; Catricola Decl. ¶ 5; Jahshan Decl. ¶ 5; Harrold Decl. ¶ 5; Jacques Decl. ¶ 5; Abe Decl. ¶ 5.)  Based on the foregoing, the typicality requirement is also satisfied.

*d)      Rule 23(a)(4)—Adequacy of Representation:*

This Rule requires (1) that the representative plaintiffs do not have conflicts of interest with the putative class; and (2) that plaintiffs are represented by qualified and competent counsel.  <u>Dukes</u>, 2010 WL 1644259 at *33.  In this case, the Plaintiffs and the putative class members alike seek relief against certain policies and practices of the Defendant and are thus aligned in interest.  (Diapo Decl. ¶¶ 5,8; Liberty Decl. ¶¶ 5,8; Catricola Decl. ¶¶ 5,8; Jahshan Decl. ¶¶ 5,8; Harrold Decl. ¶¶ 5,8; Jacques Decl. ¶¶ 5,8; Abe Decl. ¶¶ 5,8.)  Plaintiffs' counsel are well-situated to assume the responsibilities of class counsel because they are experienced employment and class action litigators who were fully qualified to pursue the interests of the class.  (von Loewenfeldt Decl. ¶¶ 3-4; Ng Decl. ¶ 3; Carnakis Decl. ¶¶ 3-4.)

*e)      Rule 23(b)(3)—Predominance and Superiority:*

The predominance inquiry focuses on the relationship between the common and individual issues, testing whether the proposed classes are sufficiently cohesive to warrant adjudication by representation.  <u>Wang</u>, 231 F.R.D. at 612 (citation omitted).  As demonstrated above, the several questions of law and fact common to the Plaintiffs' claims and to those of the putative class in this case represent significant aspects of this case and thus provide a clear justification for handling the dispute on a representative rather than on an individual basis.  <u>See</u> <u>id.</u>

(citations omitted).  Class treatment is also the superior method for resolving all claims in this case because "a class action would (1) accomplish judicial economy by avoiding multiple suits, and (2) protect the rights of persons who might not be able to present claims on an individual basis." <u>Id.</u> at 614.  Furthermore, each class member's claim may not be large enough for separate litigation, so it is desirable to concentrate all claims in one proceeding.  Plaintiffs further believe that it would be also in Defendant's best interests to resolve all claims for the class period in one proceeding to avoid the cost of multiple lawsuits.  Plaintiffs are not aware of other pending similar lawsuits.  (Ng Decl. ¶ 15.)

Thus, Plaintiffs contend that adjudication (and resolution by virtue of the proposed settlement) of these common issues, which represent significant aspects of this case, would serve to adjudicate (and resolve) substantially all of the issues affecting the entire class.  Plaintiffs' claims are part and parcel of the greater class claims, and based on the same factual predicates and legal theories.  Based on the foregoing, Plaintiffs believe that the proposed class satisfies the applicable Rule 23 certification requirements, and the parties respectfully request that the Court conditionally certify the class for settlement purposes.

**B.    PRELIMINARY SETTLEMENT APPROVAL IS THE PROPER FIRST STEP TOWARD A FINAL RESOLUTION OF THIS ACTION.**

The compromise and dismissal of a class action requires the approval of the Court, as well as notice to the class members.  Fed. Rule Civ. Proc. 23(e).  It should not be overlooked that "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" <u>Officers for Justice v. Civil Service Comm'n</u>, 688 F.2d 615, 624 (9th Cir. 1982) (citations omitted).

KERR
&
WAGSTAFFE
LLP

– 13 –

Approval of a class action settlement is a three-step process: (1) the court must preliminarily approve the proposed settlement; (2) members of the class must be given notice of the proposed settlement and (3) a hearing must be held, after which the Court must decide whether the proposed settlement is fair, reasonable, and adequate.  Whitford v. First Nationwide Bank, 147 F.R.D. 135, 137 (W.D. Ky. 1992); Manual for Complex Litigation § 21.63.

The parties to this action have reached a compromise of the claims in this action.  Accordingly, the Representative Plaintiffs hereby request that this Court take the initial steps in the settlement approval process, and grant preliminary approval of the proposed Class Action Settlement Agreement, approve the proposed Notice for delivery by the United States Postal Service, and schedule a formal fairness hearing.  If this Motion is granted, the Notice will be delivered by first class United States Mail to the last known addresses of all Members, informing them of the existence and terms of the proposed settlement, of their right to comment in support of or opposition thereto, and of the date, time, and place of the formal fairness hearing, which they are invited, but not required, to attend. (Exhibit A.)

### C.   STANDARD FOR PRELIMINARY SETTLEMENT APPROVAL

The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentations from the settling parties.  Manual for Complex Litigation § 21.63.  The question presented by a motion for preliminary approval of a proposed class action settlement is whether the proposed settlement is "sufficiently fair and reasonable for submission

to members of the prospective class." <u>Philadelphia Housing Auth. v. Am. Radiator & Standard Sanitary Corp.</u>, 323 F. Supp. 364, 374 (E.D. Pa. 1970); <u>Liebman v. J.W. Petersen Coal & Oil Co.</u>, 73 F.R.D. 531 (N.D. Ill. 1973).

At this stage, the Court is not making a final determination on whether the settlement is fair, reasonable, and adequate, as is ultimately required by Fed. Rule Civ. Proc. 23(e).  Rather, the Court need only decide whether the settlement appears to fall "within the range of possible approval."  <u>Armstrong v. Bd. of Sch. Directors</u>, 616 F.2d 305, 314 (7th Cir. 1980), <u>overruled on other grounds by</u> <u>Felzen v. Andreas</u>, 134 F.3d 873 (7th Cir. 1998); <u>see also</u> <u>Berry v. School Dist. of City of Benton Harbor</u>, 184 F.R.D. 93, 97 (W.D. Mich. 1998) (the court first must determine "whether the proposed settlement is potentially approvable"); <u>In re Mid-Atlantic Toyota Antitrust Litig.</u>, 564 F. Supp. 1379, 1384 (D. Md. 1983) (likening preliminary approval to a finding that there is "probable cause" to submit the settlement to the class and to hold a full-scale final approval hearing); <u>Newberg</u> § 11.25.

The Court makes this evaluation of "preliminary fairness" based upon its own knowledge of the case, the briefs, evidence and arguments presented at the time of the preliminary approval request.  <u>Whitford</u>, 147 F.R.D. at 138; <u>Newberg</u> § 11.25.  In considering whether a potential settlement is within the range of possible approval, the trial court should not conduct a trial on the merits of the claims and defenses asserted in the action.  <u>Officers for Justice</u>, 688 F.2d at 625.  Indeed, the trial court does not have to reach any ultimate conclusions on the issues of fact and law that underlie the merits of the dispute.  <u>Detroit v. Grinnell Corp.</u>, 495 F.2d 448, 456 (2d Cir. 1974), <u>overruled on other grounds by</u> <u>Goldberger v. Integrated</u>

1   Resources, Inc., 209 F.3d 43 (2d Cir. 2000); Grunin v. Int'l House of Pancakes,

2   513 F.2d 114, 123-24 (8th Cir. 1975) (citations omitted).

3          Instead, the following factors should be considered by the court in

4   evaluating a settlement for purposes of preliminary approval:  (1) does the

5   settlement appear to fall within the range of possible approval; (2) does the

6   settlement disclose grounds to doubt its fairness or other obvious deficiencies; (3)

7   does the settlement grant unduly preferential treatment to class representatives or

8   to segments of the class; (4) does the settlement grant excessive compensation to

9   attorneys; (5) is the settlement the product of informed, arms-length, non-collusive

10  negotiations.  In re Tableware Antitrust Litig., 484 F. Supp. 2d 1078, 1079-

11  80 (N.D. Cal. 2007); Whitford, 147 F.R.D. at 138; Newberg § 11.25.  No one

12  factor should be considered determinative.

13         Importantly, the court is not empowered to rewrite the parties' settlement

14  agreement or to determine if the "best" settlement was reached.  Rather, the court

15  must give its approval or disapproval, "compar[ing] the terms of the compromise

16  with the likely rewards of the litigation."  Weinberger, 698 F.2d at 73 (quoting

17  Protective Comm. for Indep. Stockholders v. Anderson, 390 U.S. 414, 424–25

18  (1968).  In this regard, the court "should keep in mind the unique ability of class

19  and defense counsel to assess the potential risks and rewards of litigation."

20  Newberg on Class Actions § 11.47; Reed v. Gen. Motors Corp., 703 F.2d 170, 175

21  (5th Cir. 1983) (the value of the assessment of able counsel cannot be disputed

22  because counsel "know their strengths and they know where the bones are

23  buried").  Thus, courts have repeatedly recognized that the opinion of counsel in

24  support of the settlement is entitled to considerable weight.  See, e.g., Armstrong,

KERR
&
WAGSTAFFE
LLP

616 F.2d at 325; <u>Fisher Bros. v. Cambridge-Lee Indus., Inc.</u>, 630 F. Supp. 482, 488–89 (E.D. Pa. 1985).  Finally, "it must not be overlooked that voluntary conciliation and settlement are the preferred means of dispute resolution. . . . [which] is especially true in complex class action litigation."  <u>Officers for Justice</u>, 688 F.2d at 625 (citations omitted).

### D.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL

#### 1.   The Settlement Has No "Obvious Deficiencies" and Falls Within the Range of Possible Approval.

The proposed settlement easily satisfies the stated criteria for preliminary approval.  First, the proposed settlement has no "obvious deficiencies," and, to the contrary, is fair and reasonable.  Under the terms of the proposed settlement, Flight Centre USA is to pay to the proposed class up to $1.8 million.[4]  (Settlement Agreement ¶ 3.1.)  The proposed settlement payment in this case constitutes a substantial percentage of the likely recovery that could have been obtained by the putative class after a success on the merits and final resolution of the action.  (Ng Decl. ¶ 12.)  The settlement payment in this case is well within the acceptable range of approval.  <u>Compare</u> <u>Entin v. Barg</u>, 412 F. Supp. 508, 515 (E.D. Pa. 1976) (17% of alleged damages and about 1/3 of damages of claim-filing class members was reasonable); <u>In re Four Seasons Sec. Laws Litig.</u>, 58 F.R.D. 19, 37 (W.D.

---

[4]      As stated in the Settlement Agreement, Flight Centre USA has agreed to settle this matter in the interest of avoiding the high costs of litigation and without admitting liability.  Flight Centre USA denies any liability for the claims asserted in the Complaint, and asserts that it has at all times complied with California law.  Given the settlement, which is in all parties' interest, Flight Centre USA has not filed declarations disputing the factual assertions in the Class Representatives' declarations, and we agree that Flight Centre USA's forebearance from doing so is not a concession of any of the underlying facts concerning the merits of this case.

KERR
&
WAGSTAFFE
LLP

1 Okla. 1972) (class settlement of less than 8% of provable damages was

2 reasonable).

3        Settlement payments are being made on a proportional basis depending on

4 each individual Class Member's length of employment and job position so that all

5 are treated on a consistent basis.[5]  Flight Centre USA is required to pay the

6 employer share of payroll taxes where applicable in addition to the Gross

7 Settlement Fund.  The Settlement Agreement, furthermore, provides this monetary

8 payment with only a simple claim form, and protects Class Members who fail to

9 cash their settlement payments.  The Settlement Agreement further provides that

10 Plaintiffs may recover reasonable attorneys' fees and costs from the Gross

11 Settlement Fund, subject to the approval of the Court.  In addition, the

12 Representative Plaintiffs will each seek a $5,000 incentive award, subject to

13

14

15 approval.

16          **2.      The Settlement is the Product of Serious, Informed and**
                       **Non-Collusive Negotiations.**
17

18        Second, the comprehensive proposed Class Action Settlement Agreement

19 submitted herewith was achieved through a fair compromise of disputed claims.

20 Settlement was reached through a fair compromise of disputed claims arrived at

21 through substantial exchange of information and data analysis followed by a full

22 day of arm's-length negotiations before a respected mediator with expertise in the

23 relevant field.  Class Counsel strongly support the proposed settlement as fair,

24

25 ────────────────

26 [5]      The settlement payments are split 85%/15% amongst different job
classifications to account for two factors:  (1) the smaller number of work weeks at
27 issue in the Team Leader and Business Development Manager categories, and (2)
the greater risk posed in those categories by Flight Centre USA's exemption
28 defenses.  (Ng Decl. ¶ 12.)



taking into consideration issues of potential liability, damages, and the time and expense of proceeding further. (von Loewenfeldt Decl. ¶¶ 8, 10; Ng Decl. ¶¶ 13, 17; Carnakis Decl. ¶¶ 9, 11.)

Counsel for Plaintiffs have extensive litigation experience, particularly in complex and class litigation.  The opinion of counsel in support of the settlement is based on a realistic assessment of the strengths and weaknesses of their respective cases, extensive legal and factual research, as well as substantial discovery.  The opinion of counsel is also based on an assessment of the risks of proceeding with the litigation through trial and, if a verdict were recovered, through appeal as compared to the certain value of a settlement at this time. (von Loewenfeldt Decl. ¶¶ 8, 10; Ng Decl. ¶¶ 13, 17; Carnakis Decl. ¶¶ 9, 11.)

These risks include the significant barriers to recovery with which Plaintiffs' claims are faced.  Flight Centre USA contends that its employees are exempt from overtime, a defense that, if accepted, would negate the class claims. The courts are also split on the extent of an employer's affirmative obligation under California law to provide meal and rest breaks to employee, a question that is currently pending before the California Supreme Court.  Until the California Supreme Court lends clarity to this issue, the uncertain state of the law adds to the risks facing a putative class in any meal or rest break case.  In light of the risks to both sides of going forward, and the benefits of putting this dispute to rest, counsel believe that this proposed settlement is fair to all parties and should be approved.

KERR
&
WAGSTAFFE
LLP

### 3. The Settlement Does Not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class, Nor Does it Provide Excessive Compensation to Counsel.

No group or member of the proposed class is discriminated against under the terms of the proposed settlement.  Nor does the proposed Class Action Settlement Agreement require a bonus to the Representative Plaintiffs or counsel for the proposed class.  It provides only that counsel for the proposed class may apply to the Court for an award of their attorneys' fees and a reimbursement of their expenses and costs, including the costs of administration, and that the Representative Plaintiffs may apply for an incentive award incurred in connection with the prosecution of this action.  The proposed Class Action Settlement Agreement does not condition the settlement on the Court's issuance of any such awards.  (Settlement Agreement ¶¶ 7.2, 8.1.)

For all the foregoing reasons, counsel believe that the proposed settlement—reached after substantial investigation, discovery, and arms-length negotiations between counsel, including a day of settlement mediation before Mark Rudy — is fair, reasonable, and adequate because it provides the proposed class with a substantial portion of its estimated damages without the expense, delay or risk of continued litigation.  In accordance with the authority cited above, the Court should afford considerable weight to this conclusion and grant preliminary approval of the proposed settlement, permitting all members of the proposed class to receive formal notice of the proposed settlement and to have the opportunity to comment upon it at a final fairness hearing.

KERR
&
WAGSTAFFE
LLP

1

**E.    THE PROPOSED NATURE AND METHOD OF CLASS NOTICE ARE APPROPRIATE.**

2

**1.    The Proposed Method of Notice Satisfies Due Process.**

3

Trial courts are allowed substantial latitude in determining fair and

4

expedient procedures for notice.  See, e.g., Gottleib v. Wiles, 11 F.3d 1004, 1013

5

(10th Cir. 1993), abrogated on other grounds by Devlin v. Scardelletti, 536 U.S. 1

6

7

(2002) (content and form of notice are left to the court's discretion).

8
> [C]lass members must be notified of a settlement in a
> manner that does not systematically leave any group
9
> without notice; notice must indicate that class members
> can object; each objection must be made part of the
10
> record; and each opponent raising a substantial objection
> has a right to be heard, to be represented by an attorney,
11
> and to have a reasoned response by the court on the
> record.
12

13

Boyd v. Bechtel Corp., 485 F. Supp. 610, 617 (N.D. Cal. 1979).  While there are

14

no rigid standards, "the notice must fairly apprise the prospective members of the

15

class of the terms of the proposed settlement and of the options that are open to

16

them in connection with [the] proceedings, . . . , and it must be neutral."

17

Weinberger, 698 F.2d at 70 (internal quotation marks and citations omitted).

18

The proposed Notice is attached hereto as Exhibit A.  The Notice fairly,

19

accurately, and neutrally describes the proposed settlement, the hearing concerning

20

final approval of the proposed settlement, and the related rights of the members of

21

the proposed class.  The Notice will be sent to Class Members by first class United

22

States Mail to their last known address.    Accordingly, the proposed Notice

23

24

satisfies the due process requirements.

25

**2.    The Proposed Notice is Accurate and Informative.**

26

The Manual for Complex Litigation directs that notice of a proposed

27

settlement should: (1) announce the terms of the proposed settlement and state that,

28

KERR
&
WAGSTAFFE
LLP

– 21 –

if approved, it will bind all class members; (2) "outline the original claims, relief sought, and defenses so class members can make an informed decision about whether to opt out"; and (3) if the class has been certified only for settlement purposes, it should disclose that fact.  <u>Manual for Complex Litigation</u> § 21.312.

The proposed Notice is based on the format recommended by the Federal Judicial Center's "Illustrative" Forms of Class Action Notice, available at www.fjc.gov.  The Notice summarizes the proceedings to date, the risks of continued litigation for all parties, and the terms and conditions of the proposed settlement in an informative and coherent manner, providing class members with the information they need to make informed decisions on whether to accept, object to, or opt out of the proposed settlement.  It also states that the decision whether to approve the settlement has yet to be made.  (Ex. A hereto.)  Accordingly, the Notice is fair, complete, and neutral, and should be approved by the Court.  Fed. Rule Civ. Proc. 23(c)(2) and (e); <u>Manual for Complex Litigation</u> § 21.312.

## F.   SCHEDULING A FINAL APPROVAL HEARING IS APPROPRIATE.

The last step in the settlement approval process is the formal hearing at which the court may pursue any inquiries necessary to obtain information relevant to its settlement evaluation.  At that hearing, proponents of the settlement may explain and describe its terms and conditions, and offer argument in support of settlement approval.  Members of the proposed class, or their counsel, may be heard regarding approval or disapproval of the settlement.

Counsel believe the following schedule provides ample time to members of the proposed class who wish to object to the settlement.  This schedule is based on the Court hearing this motion on June 14, 2010, the presently next available date.

If the Court decides the motion earlier, the schedule could be advanced consistent with the time periods discussed below.

- Notice will be mailed to the Class by June 29, 2010 [8 days after preliminary approval is granted]

- Class members who wish to appear and/or object to file papers by July 29, 2010. [30 days after Notice is mailed]

- Class members who wish to opt out to do so by July 29, 2010. [30 days after Notice is mailed]

- All claims submitted by August 30, 2010. [60 days after Notice is mailed]

- Final approval hearing on September 13, 2010 at 1:30 p.m. [11 weeks after Notice is mailed]

Accordingly, the parties respectfully request that the Court order the Notice to be mailed immediately and to approve the schedule listed above.

## IV.   CONCLUSION

On the basis of the foregoing, the parties respectfully request the Court to issue order conditionally certifying the proposed settlement class, preliminarily approving the proposed class action settlement as fair, reasonable, and adequate and within the range of possible final approval, approving as to form and ordering Notice to the proposed settlement class, and setting a final approval hearing.

Dated:  April 28, 2010              KERR & WAGSTAFFE LLP


                                      _/s Michael von Loewenfeldt_____
                                      Michael von Loewenfeldt
                                      Attorneys for Plaintiffs



# EXHIBIT A

## NOTICE OF CLASS ACTION SETTLEMENT
United States District Court for the Central District of California

**If you worked for Flight Centre USA, Inc. in California as an Account Manager, Future Team Leader, Travel Consultant, Team Leader, Business Development Manager, or in any other job title or position whose primary duties were the sale of goods or services at any time between June 3, 2005 and January 31, 2010 you may be entitled to money from a class action settlement.**

*A Court authorized this notice.*
*This is <u>not</u> a solicitation from a lawyer. <b>You are <u>not</u> being sued.</b>*

- Former employees of Flight Centre USA, Inc. ("Flight Centre USA") in California have sued Flight Centre USA alleging violations of California's laws governing overtime, meal and rest breaks, pay on termination, reimbursement of expenses, wage deductions, paystub requirements, and unfair business practices related to these issues.

- For purposes of settlement only, the Court has allowed the lawsuit to proceed as a class action on behalf of all employees who worked for Flight Centre USA as an Account Manager, Future Team Leader, Travel Consultant, Team Leader, or Business Development Manager in California at any time between June 3, 2005 and January 31, 2010. The Court has <u>not</u> made any determination that Flight Centre USA did anything wrong.

- The proposed settlement involves Flight Centre USA, without any admission of liability, paying $1,800,000 to settle the claims asserted in the lawsuit. The settlement resolves the lawsuit; it avoids costs and risks to the class members from continuing the lawsuit; pays money to class members like you; and releases Flight Centre USA and its related parties from liability regarding the alleged claims.

- Court appointed lawyers for the class members will ask the Court for up to $450,000 plus actual reasonable expenses not to exceed $95,000 to be paid from the settlement fund as fees and expenses for investigating the facts, litigating the case, negotiating the settlement, and administering the settlement.

- Your legal rights are affected whether you act, or don't act. Read this notice carefully.

| Your Legal Rights and Options | |
|---|---|
| **Return a Claim Form**<br><br>**Claim Forms Are Due By _____.** | Receive payment in the mail. If you move, make sure you update your address with the administrator so you get your check. |
| **Do Nothing** | Stay in the lawsuit, but get no payment. Lose your right to file your own lawsuit against Flight Centre USA. |
| **Exclude Yourself**<br><br>**Exclusions are Due By _____.** | Decide not to participate in the lawsuit. Get no money from the settlement. Keep your right to sue Flight Centre USA separately if you want to do that. |
| **Object** | Write to the Court if you don't agree with the terms of the settlement. |
| **Go To A Hearing** | Ask to speak to the Court about the fairness of the settlement. |

- These rights and options **– and the deadlines to exercise them –** are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement. Payments will be made if the Court approves the settlement and after any appeals are resolved. Please be patient.

- Any questions? More details are provided below.

## BASIC INFORMATION

**1.      Why did I get this notice?**

The Defendants' records indicate that you were employed by Flight Centre USA as an Account Manager, Future Team Leader, Travel Consultant, Team Leader, or Business Development Manager in California at some time between June 3, 2005 and January 31, 2010. This notice explains that for settlement purposes only, the Court has allowed, or "certified," a class action lawsuit that may affect you and that a settlement has been reached in that case. You have legal rights and options that you may exercise at this time.

**2.      What is this lawsuit about?**

This lawsuit a case that was filed by seven former Flight Centre USA employees. The case name is *Leo Diapo, David Liberty, Matthew Catricola, Rick Jahshan, Jason Harrold, Judith Jacques, and Karen Abe v. Flight Centre USA, Inc.*, United States District Court for the Central District of California Case No. CV-09-4790 PSG.

The case alleges that Flight Centre USA failed to pay overtime, failed to permit meal and rest breaks, failed to pay all wages due on termination, failed to reimburse expenses, took improper wage deductions, failed to provide lawful wage statements, and committed unfair or unlawful business practices with regard to the above issues.

Flight Centre USA has denied all of the allegations, denies any liability for the claims asserted in the Complaint, and believes that it has at all times complied with California law. Nevertheless, Flight Centre USA has agreed to settle this matter having considered that further conduct of the lawsuit would be lengthy and expensive.

The Court has made no final determinations in this matter.

**3.      Who is included in the Class and who is entitled to part of the settlement?**

The Class is defined as: all persons employed by Flight Centre USA in the State of California, at any time between June 3, 2005 and January 31, 2010, as Travel Consultants, Account Managers, Future Team Leaders, Team Leaders and Business Development Managers, or in any other job title or position whose primary duties were the sale of goods and services.

The settlement payment is available to everyone in the Class.

The Court has appointed seven former employees to be representatives for the class: Leo Diapo, David Liberty, Matthew Catricola, Rick Jahshan, Jason Harrold, Judith Jacques and Karen Abe. They are referred to as the Class Representatives or Representative Plaintiffs.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

**4.      How much is the overall settlement?**

Flight Centre USA has agreed to pay one million eight hundred thousand dollars ($1,800,000) to be divided among class members who submit claim forms after deduction of attorneys' fees, costs, enhancement payments to the Class Representatives, and applicable taxes and withholding.

**5.      What amounts will be deducted from the settlement?**

The settlement payment will be used to pay class members, the class counsel and representatives, and all administration expenses.

**6.      How much will my payment be?**

Your individual share will be based on the number of weeks you worked and your job position during the Class Period.  85% of the settlement after deductions is being allocated to work weeks for Travel Consultants, Account Managers, Future Team Leaders, and those working in any other job title or position whose primary duties were the sale of goods and services.  15% of the settlement is being allocated to work weeks for Team Leaders and Business Development Managers.  These percentages are based on the number of employees and work weeks in each category, the wages earned, and varying legal defenses potentially applicable to the claims of each group.

The actual amount of money you receive will be based on the size of your individual share in comparison to the size of all class members' shares combined.  Your individual dates and positions are printed on your claim form. If that information is incorrect, please provide correct information, along with supporting documents, as instructed on the claim form.

**7.      How can I get a payment?**

In order to receive a payment, **you must sign and return the Claim Form** provided with this Notice by no later than _____.  By signing the Claim Form, you are agreeing to accept the settlement terms, and are releasing your claims against Flight Centre USA as set forth in question # 8 below in return for the settlement payment. **FLIGHT CENTRE USA WILL NOT RETALIATE AGAINST ANY PERSON WHO RECEIVES HIS OR HER SHARE OF THE SETTLEMENT.**

**If you move following receipt of this Notice**, or if the address to which this Notice was sent is not correct, you must immediately contact the Claims Administrator, whose address and contact information is as follows:

> \*\*\*\*\*\*\*\*\*\*\*\*\*
> \*\*\*\*\*\*\*\*\*\*\*\*\*
> \*\*\*\*\*\*\*\*\*\*\*\*\*
> 1-800-###-####

> ✓      **It is your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your settlement payment.**

You may contact the Claims Administrator at the toll-free number listed at the bottom of each page and/or send them a letter which provides your complete name, address, telephone number(s), and email address to ensure receipt of your settlement check.

**8.      What am I giving up to get a payment or stay in the Class?**

The release in this case is governed by the Settlement Agreement filed with the Court.  Unless you exclude yourself, you are staying in the class, which means that you can't sue, continue to sue, or be part of any other lawsuit against Defendants about the legal issues in this case.  It also means that all of the Court's orders will apply to you and legally bind you.

Specifically, according to the terms of the Settlement Agreement in this case which control the release of class claims, if you do not return a claim form, or if you sign and return a claim form to receive a payment, you will be deemed to have, and by operation of the Judgment shall have, fully, finally, and

forever released, relinquished and discharged all claims under state, federal or local law arising out of or related to allegations in the operative complaint of the Lawsuit, including but not limited to all claims for alleged violation of Labor Code sections 201-204, 221, 226, 226.7, 510, 2699-2699.5 and 2802; and Business and Professions Code section 17200 et seq. claims arising from such Labor Code violations, during the Class Period (June 3, 2005 until January 31, 2010) against Flight Centre USA, Inc. and each of its past or present directors, officers, employees, partners, principals, members, managers, agents, parent companies, subsidiaries, underwriters, issuers, insurers, co-insurers, reinsurers, controlling shareholders, any individual or entity that could be jointly liable with such person, any entity in which the person has a controlling interest, advisors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, associates, related or affiliated entities, any members of his/her/its immediate families, or any trust of which any person is the settlor, or which is for the benefit of any person and/or member(s) of his or her family.

### 9.   What if I do nothing?

If you do nothing, you will <u>not</u> receive any money under the settlement. You will, however, continue to be a part of the Class, and will lose your right to sue Defendants as discussed in question 8 above. To receive a payment, **you must sign and return your claim form by _____.**

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 10.   How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter in the mail saying that you want to be excluded from *Diapo et al. v. Flight Centre USA, Inc.* Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request postmarked by no later than _____, 2010 to:

*********
*********
*********

If you ask to be excluded, you will not get any settlement payment and you cannot object to the settlement. You will not be bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) Defendants for the claims described above in the future.

### 11.   If I don't exclude myself, can I sue Flight Centre USA for the same thing later?

No. Unless you exclude yourself, you give up any right to sue Flight Centre USA for the claims that this settlement resolves. If you have a pending lawsuit against Flight Centre USA, speak to your lawyer in that case immediately. You must exclude yourself from *this* lawsuit if you wish to pursue your own, separate lawsuit at your own expense. Remember, the exclusion deadline is _____.

### 12.   If I exclude myself, can I get money from this settlement?

No. If you exclude yourself, you will not receive any money from this settlement.

## THE LAWYERS REPRESENTING YOU

### 13. Do I have a lawyer in this case?

The Court has appointed two law firms to represent you and the other Class Members. These lawyers are called Class Counsel. You will not be charged individually for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own expense. The Class Counsel are:

| Michael von Loewenfeldt<br>Michael Ng<br>KERR & WAGSTAFFE LLP<br>100 Spear Street, Suite 1800<br>San  Francisco, CA 94105-1528<br>(415) 371-8500<br>mng@kerrwagstaffe.com | Jerusalem F. Belgian<br>Chris L. Carnakis<br>BELGIAN LAW FIRM, LLP<br>20955 Pathfinder Road, Suite 100<br>Diamond Bar, CA 91765<br>(909) 843-6350<br>ccarnakis@gmail.com |
|---|---|

### 14.      How will the lawyers be paid?

Class Counsel will ask the Court to approve payment of up to $450,000 to them for attorneys fees, as well as reimbursement of approximately $95,000 in costs they actually spent (including the cost of this Notice and settlement administration), and payment of $5,000 to each class representative for their services as class representative.  The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement.  The Court may award less than these amounts.

**OBJECTING TO THE SETTLEMENT**

You can tell the Court that you don't agree with the settlement or some part of it.

### 15.      How do I tell the Court that I don't agree with the terms of the settlement?

If you are a Class Member, and you do not exclude yourself from the Class, you may object to the settlement if you don't agree with its terms.  You can give reasons why you think the Court should not approve it.  The Court will consider your views.  To object, you must send a letter  stating the reasons that you object to the settlement in *Diapo et al. v. Flight Centre USA, Inc.*, Case No. CV 09-4790 PSG.  Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement.  You can object personally, or through a lawyer you hire at your own expense.  Mail the objection to these three places postmarked by no later than _____.

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>255 East Temple Street<br>Los Angeles, CA 90012 | Michael von Loewenfeldt<br>Michael Ng<br>KERR & WAGSTAFFE LLP<br>100 Spear Street, Suite 1800<br>San  Francisco, CA 94105-1528 | Elizabeth Staggs Wilson<br>LITTLER MENDELSON, PC<br>2049 Century Park East, 5th Floor<br>Los Angeles, CA 90067 |

### 16.      What if I agree with the settlement but the information on my Claim Form is wrong?

If you agree with the settlement, but you believe the dates or positions listed on the back of your Claim Form are wrong, you do **not** need to file an objection using the above procedure.  Instead, simply write the correct dates on the back of the Claim Form along with any other facts necessary to understand why the information stated is wrong.  If you have documents (such as paystubs) that support your corrections, please attach them too. Return the Claim Form and any attached materials by _____ and the Administrator will investigate to make sure your share of the settlement is correctly calculated.  Remember to sign your Claim Form.

### 17.      What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement.  You can object only if you stay in the Class.  Excluding yourself is telling the Court that you don't want to be part of the Class.  If you exclude yourself, you cannot object because the case no longer affects you.

5

**18.    If I object, can I still submit a Claim Form and receive money from the settlement?**

Yes, if you object **and submit a claim form by** ____ you will receive money from the settlement if the Court approves the settlement. If you object, but do not submit a Claim Form, you will not receive any money from the settlement if the Court overrules your objection.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to determine whether the proposed settlement is fair and reasonable.

**18.    When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing on _____ at _____ in Courtroom 880 of the United States District Court, located at 255 East Temple Street, Los Angeles, CA 90012. After the hearing, the Court will decide whether to approve the settlement. We do not know how long these decisions will take.

**19.    Do I have to come to the hearing?**

No. Class Counsel will answer any questions the Judge may have. But, you are welcome to come at your own expense. If you send an objection, you don't have to come to Court to talk about it. As long as you mailed your written objection on time, the Court will consider it. You may also pay your own lawyer to attend.

**20.    May I speak at the hearing?**

Yes, but you need to let the Court and parties know in advance. If you wish to speak at the hearing, or wish an attorney hired by you at your own expense to do so, you or your attorney must send a letter stating that it is your "Notice of Intention to Appear in *Diapo et al. v. Flight Centre USA, Inc., Case No. CV 09-4790 PSG*". Be sure to include your name, address, telephone number, and your signature. Your Notice of Intention to Appear must be postmarked no later than _____ and sent to all three addresses in question 15. You cannot speak at the hearing if you excluded yourself.

## GETTING MORE INFORMATION

**21.    Are there more details about the settlement?**

This notice summarizes the proposed settlement. More details are in the settlement agreement. All court records in this litigation, including complete copies of the Class Action Settlement Agreement, may be examined during regular court hours at the office of the Clerk of the Court, United States District Court 255 East Temple Street, Los Angeles, CA 90012 or you may obtain copies of any of these documents at your own expense by contacting the Clerk of the Court.

**22.    Other questions regarding the settlement or this notice?**

If you have any questions about the proposed settlement or this Notice, you may contact the Claims Administrator at 1-800-###-####.

**23.    What happens if I move?**

It is important for the parties to have your current address in order to be able to send you other mailings regarding the lawsuit. You should contact the Claims Administrator to report any change of your address after you receive this Notice. Failure to report a change of address may result in you not receiving money from the settlement.