1   MICHAEL VON LOEWENFELDT (178665)
    MVL@KERRWAGSTAFFE.COM
2   MICHAEL NG (237915)
    MNG@KERRWAGSTAFFE.COM
3   **KERR & WAGSTAFFE LLP**
    100 SPEAR STREET, SUITE 1800
4   SAN FRANCISCO, CA 94105–1528
    TELEPHONE: (415) 371-8500
5   FAX: (415) 371-0500

6   JERUSALEM F. BELIGAN (211258)
    JBELIGAN@GMAIL.COM
7   CHRIS L. CARNAKIS (219769)
    CCARNAKIS@GMAIL.COM
8   **BELIGAN LAW FIRM, LLP**
    20955 PATHFINDER ROAD, SUITE 100
9   DIAMOND BAR, CA 91765
    TELEPHONE: (909) 843-6404
10  FAX: (909) 843-6350

11  ATTORNEYS FOR PLAINTIFFS
    LEO DIAPO, DAVID LIBERTY, MATTHEW CATRICOLA,
12  RICK JAHSHAN, JASON HARROLD,
    JUDITH JACQUES AND KAREN ABE

13

14              **UNITED STATES DISTRICT COURT**

15              **CENTRAL DISTRICT OF CALIFORNIA**

16                  **WESTERN DIVISION**

| 17 | LEO DIAPO, DAVID LIBERTY, MATTHEW CATRICOLA, RICK JAHSHAN, JASON HARROLD, JUDITH JACQUES and KAREN ABE, on behalf of themselves and those similarly situated, | Case No. CV 09-4790 PSG (RZX) |
|---|---|---|
| | Plaintiffs, | DECLARATION OF MICHAEL VON LOEWENFELDT IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT |
| | vs. | DATE:     June 21, 2010<br>TIME:     1:30 p.m.<br>PLACE:   Courtroom 880 |
| | FLIGHT CENTRE USA, INC., a Delaware corporation; and DOES 1-25, | Honorable Philip S. Gutierrez |
| | Defendants. | |

# DECLARATION OF MICHAEL VON LOEWENFELDT

I, Michael von Loewenfeldt, declare:

1.      I am attorney at law duly licensed to practice before all state and federal courts in California, the United States District Court for the Eastern and Southern Districts of Texas, the United States District Court for the District of Colorado, the United States Court of Appeals for the Fifth Circuit, and the United States Supreme Court. This declaration is submitted in support of the Plaintiffs' motion for preliminary approval of the settlement reached in this action and related orders.

2.      The matters set out herein are based upon my own personal knowledge as developed through my representation of the class, investigation, and discovery in this action.

3.      I am a partner of the law firm of Kerr & Wagstaffe LLP. Our firm has extensive experience with employment law, unfair competition, and class action litigation. I graduated Phi Beta Kappa from San Diego State University in 1991 with a B.A. in Political Science. I received my J.D. from the University of California at Berkeley (Boalt Hall) in 1995 and was made a member of the Order of the Coif. After law school, I served as a law clerk to the Honorable Saundra B. Armstrong, United States District Court for the Northern District of California. I am a member of the Bar Association of San Francisco and the American Bar Association.

4.      My practice focuses on employment, consumer, and class action litigation. I have represented both plaintiffs and defendants in class actions in California and other jurisdictions in the United States. I have represented certified plaintiffs' classes in:

- <u>Bhatnagar et al. v. Catalina Restaurant Group, Inc.</u>, Superior Court of California, County of Alameda, RG 05246009, a wages and hour class

action which settled on terms which settled on terms approved by the Alameda County Superior Court;

- <u>Finley v. Wells Fargo Financial Acceptance California, Inc.</u>, Superior Court of California, County of Los Angeles (Central District), BC 331174, a wages and hour class action which settled on terms that were finally approved by the Los Angeles County Superior Court

- <u>Forestiere v. West Coast Life Ins. Co.</u>, Superior Court of California, County of San Francisco case number 402340, a consumer rights class action involving the purchase of life insurance policies, which settled on terms approved by the San Francisco Superior Court;

- <u>Knight v. Red Door Salons</u>, United States District Court for the Northern District of California case number C-08-1520 SC, a wages and hour class action which settled on terms that were approved by the United States District Court;

- <u>McCardle v. 24 Hour Fitness</u>, Superior Court of California, County of Alameda, RG08414888, a consumer rights class action involving access to various levels of gyms at 24 Hour Fitness, which settled on terms approved by the Alameda County Superior Court.

- <u>Mullholland v. Cozza</u>, Superior Court of California, County of San Francisco, CGC 07-468443, a wages and hour class action which settled on terms that were approved by the San Francisco County Superior Court;

- <u>Radford v. HFS North America LLC</u>, Superior Court of California, County of Alameda, RG 06296440, a wages and hour class action which settled on terms that were approved by the Alameda County Superior Court;

- <u>Topper and Molina v. RedWing Shoe Company, Inc.</u>, Superior Court of California, County of Alameda, RG 06256269, a wages and hour class

1   action which settled on terms that were approved by the Alameda County

2   Superior Court;

3   • <u>Venegas et al. v. Apria Health Care, Inc.</u>, Superior Court of California,

4   County of San Francisco, CGC 06-449669, a wage and hour class action

5   which settled on terms that were approved by the San Francisco County

6   Superior Court.

7   • <u>Weir v. 24 Hour Fitness</u>, Superior Court of California, County of San

8   Francisco, CGC-05-438478, a consumer rights class action involving 1.8

9   million Class Members which settled on terms that were approved by the

10   San Francisco County Superior Court.

11   • <u>Williams v. L.A. Fitness International</u>, Superior Court of California,

12   County of Los Angeles, BC385623, a consumer rights class action

13   involving approximately 1.1 million Class Members, which settled on

14   terms that have been preliminarily approved and are awaiting final

15   approval.

16   5.     Our firm and the Beligan Law Firm LLP were retained by Leo Diapo,

17   David Liberty, Matthew Catricola, Rick Jahshan, Jason Harrold, Judith Jacques and

18   Karen Abe to analyze and pursue potential claims against Flight Centre USA, Inc.

19   arising from their employment. Most of the work our firm did on this case was

20   performed and/or directly supervised by partner Michael Ng, who is submitting a

21   separate declaration herewith.  My role was primarily overall supervision of the file

22   and participation in the mediation and subsequent negotiations.

23   6.     On December 17, 2009 the parties participated in a lengthy,

24   contentious day of mediation before noted mediator and experienced employment

25   litigator Mark Rudy.  Two of the class representatives personally participated at the

26   mediation itself, and others provided information and viewpoints in connection

27   with it.  Based on my experience in similar cases, our pre-mediation discovery and

28   investigation provided us with ample information to analyze both the substantive

KERR
—&—
WAGSTAFFE
LLP

CASE NO. CV 09-4790 PSG                                    MVL DECL. ISO PRELIM. APPROVAL

1  factual and legal merits of plaintiffs' claims as well as the potential damages and

2  penalties flowing from those claims.

3        7.     The parties did not reach agreement at the mediation, but came close

4  and were able with the mediator's assistance to continue negotiations and agree to

5  final terms in February 2010.  The negotiations were at arms-length, professional

6  while being contentious, and required substantial compromise by both sides. The

7  end result of this negotiation was the agreement documented in the Settlement

8  Agreement, which is attached hereto as Exhibit A.

9        8.     Considering the legal hurdles facing the class claims, the inherent

10  uncertainty of any trial, and the lengthy time before this action could be finally

11  resolved after appeal, this relief is more than adequate and fair – it is a very good

12  settlement providing strong consideration to the class.

13        9.     The attorneys' fees requested by Class Counsel, and the incentive

14  awards for the class representatives, were negotiated separately from the amount of

15  the Gross Settlement Fund.  The settlement is not contingent on court approval of

16  any specific amount of fees or incentive awards.  We will provide further support

17  for these requests in connection with the actual fee request made at the final

18  approval stage.

19       10.    I believe that this settlement is in the best interest of the class, based

20  on our investigation of the claims and factual bases underlying those claims, the

21  discovery produced and analyzed in this case, the expense, length, and risk of

22  continued proceedings, the views of the class representatives, my experience with

23  this area of the law and similar claims, and our extensive negotiations with counsel

24  for defendant (who are, themselves, highly respected and experienced employment

25  defense counsel).

26  ///

27  ///

28  ///

KERR
&
WAGSTAFFE
LLP

1        I declare under the penalty of perjury under the laws of the State of

2   California that the foregoing is true and correct.  Executed on this 28th day of

3   April, 2010, in San Francisco, California.

4                       /s Michael von Loewenfeldt

5                        Michael von Loewenfeldt

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

MICHAEL VON LOEWENFELDT (178665)
mvl@kerrwagstaffe.com
MICHAEL NG (237915)
mng@kerrwagstaffe.com
**KERR & WAGSTAFFE LLP**
100 Spear Street, Suite 1800
San Francisco, CA 94105–1528
Telephone: (415) 371-8500
Fax: (415) 371-0500

JERUSALEM F. BELIGAN (211258)
jbeligan@gmail.com
CHRIS L. CARNAKIS (219769)
ccarnakis@gmail.com
**BELIGAN LAW FIRM, LLP**
20955 Pathfinder Road, Suite 100
Diamond Bar, CA 91765
Telephone: (909) 843-6404
Fax: (909) 843-6350

Attorneys for Plaintiffs

J. KEVIN LILLY (119981)
klilly@littler.com
ELIZABETH STAGGS WILSON (183160)
estaggs-wilson@littler.com
**LITTLER MENDELSON**
**A PROFESSIONAL CORPORATION**
2049 Century Park East, 5th Floor
Los Angeles, CA 90067-3107
Telephone: (310) 553-0308
Fax: (310) 553-5583

Attorneys for Defendant

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| LEO DIAPO, DAVID LIBERTY, MATTHEW CATRICOLA, RICK JAHSHAN, JASON HARROLD, JUDITH JACQUES and KAREN ABE, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>FLIGHT CENTRE USA, INC., a Delaware corporation; and DOES 1-25,<br><br>Defendants. | Case No. CV 09-4790 PSG (RZX)<br><br>**CLASS ACTION SETTLEMENT AGREEMENT** |

1    **CLASS ACTION SETTLEMENT AGREEMENT**

2        This SETTLEMENT AGREEMENT is by and between Defendant Flight Centre USA,

3    Inc. ("FLIGHT CENTRE USA") and the Plaintiffs Leo Diapo, David Liberty, Matthew

4    Catricola, Rick Jahshan, Jason Harrold, Judith Jacques and Karen Abe (collectively the

5    "REPRESENTATIVE PLAINTIFFS") on behalf of the class of plaintiffs in the civil action

6    entitled *Leo Diapo et al. v. Flight Centre USA, Inc.*, United States District Court for the Central

7    District of California Case No. CV09-4790 PSG (RZx) ("LAWSUIT").  The

8    REPRESENTATIVE PLAINTIFFS and FLIGHT CENTRE USA are desirous of settling their

9    differences reflected in these actions, and have agreed to the terms of settlement set forth in this

10   SETTLEMENT AGREEMENT.

11       The REPRESENTATIVE PLAINTIFFS believe that the claims asserted in the

12   LAWSUIT have merit and believe that the evidence developed to date in the LAWSUIT,

13   including formal and informal discovery and information exchanged by the parties, supports the

14   alleged claims.  Counsel for the SETTLING PARTIES, however, recognize the expense and

15   length of continued proceedings necessary to prosecute the LAWSUIT through trial and through

16   appeals.  Counsel for the SETTLING PARTIES also have taken into account the uncertain

17   outcome and the risk of any litigation, especially in actions such as these, as well as the

18   difficulties and delays inherent in such litigation and the economic risk of prolonged litigation

19   posed by the current economic crisis.  Counsel for the REPRESENTATIVE PLAINTIFFS also

20   are mindful of the inherent problems of proof under, and possible defenses to, the causes of

21   action asserted in the LAWSUIT, including the defenses asserted by FLIGHT CENTRE USA in

22   various papers filed in the LAWSUIT.

23       FLIGHT CENTRE USA has denied, and continues to deny, liability for the claims

24   asserted by the REPRESENTATIVE PLAINTIFFS, does not believe that the evidence developed

25   to date in the LAWSUIT, including formal and informal discovery and information exchanged

26   by the parties, supports the claims alleged in the LAWSUIT, and does not waive but expressly

27   reserves all rights to challenge such claims and allegations on procedural, legal or factual

28   grounds in the event the EFFECTIVE DATE (as defined in section 1.6 below) is not reached.

KERR
&
WAGSTAFFE
LLP

1   The parties engaged in arms length negotiations, including an in-person mediation

2   session conducted with mediator Mark S. Rudy, an experienced attorney and mediator in wage

3   and hour class actions, on December 17, 2009.

4   CLASS COUNSEL believes that the settlement set forth in this SETTLEMENT

5   AGREEMENT confers substantial benefits upon the SETTLEMENT CLASS and each of the

6   SETTLEMENT CLASS MEMBERS.  Based on their evaluation, CLASS COUNSEL has

7   determined that the settlement set forth in this SETTLEMENT AGREEMENT is in the best

8   interests of the SETTLEMENT CLASS, and each of the SETTLEMENT CLASS MEMBERS.

9   It is the intention of the SETTLING PARTIES that this SETTLEMENT AGREEMENT

10  shall constitute a full and complete settlement and release of all claims arising from or related to

11  the LAWSUIT.

12  Now, therefore, it is hereby stipulated and agreed by and among the REPRESENTATIVE

13  PLAINTIFFS (for themselves and the SETTLEMENT CLASS MEMBERS) and FLIGHT

14  CENTRE USA that, subject to the approval of the Court, the LAWSUIT and the RELEASED

15  CLAIMS shall be finally and fully compromised, settled and released, and the LAWSUIT shall

16  be dismissed with prejudice, upon and subject to the terms and conditions of this SETTLEMENT

17  AGREEMENT, as follows:

18  **1.**      **Definitions**

19  As used in this SETTLEMENT AGREEMENT the following terms have the meanings

20  specified below:

21  1.1.    "ADMINISTRATOR" means Gilardi & Co., which the parties will seek to have

22  appointed by the Court to contact SETTLEMENT CLASS MEMBERS, distribute NOTICE,

23  administer the claims process, calculate and distribute payments to SETTLEMENT CLASS

24  MEMBERS, prepare and file with the appropriate taxing authorities all required documentation

25  for such payments to SETTLEMENT CLASS MEMBERS, and other responsibilities as

26  described herein.

27  1.2.    "CLAIM FORM" means the form that CLASS MEMBERS must timely sign and

28  return to the ADMINISTRATOR, as set forth in section 5, in order to receive payment under this

KERR
&
WAGSTAFFE
LLP

1 SETTLEMENT AGREEMENT.  Each CLAIM FORM shall indicate that by submitting a

2 CLAIM FORM the individual agrees to release the RELEASED CLAIMS.  The proposed

3 CLAIM FORM is attached as Exhibit A hereto.

4      1.3.    "CLAIM FORM DEADLINE" means the date by which SETTLEMENT CLASS

5 MEMBERS must return their completed claim forms in order to receive payment under the

6 PLAN OF ALLOCATION.  The CLAIM FORM DEADLINE will be 60 calendar days from the

7 date the NOTICE is mailed unless otherwise ordered by the Court.

8      1.4.    "CLASS COUNSEL" means the law firms of (i) KERR & WAGSTAFFE LLP

9 and (ii) BELIGAN LAW FIRM, LLP.

10      1.5.    "CLASS PERIOD" means June 3, 2005 until January 31, 2010.

11      1.6.    "EFFECTIVE DATE" means the date when all of the following have occurred:

12 (1) the Court has ordered FINAL APPROVAL of this SETTLEMENT AGREEMENT; (2) the

13 Court has entered an Order and JUDGMENT, dismissing the LAWSUIT with prejudice, with

14 continuing jurisdiction limited to enforcing this SETTLEMENT AGREEMENT; and (3) if, and

15 only if, the Court has overruled all or part of an objection filed by a SETTLEMENT CLASS

16 MEMBER or has denied any relief sought in the motion(s) for FINAL APPROVAL, the time for

17 appeal has either run without an appeal being filed, the aggrieved party or parties have waived

18 their right to appeal, or any appeal (including any requests for rehearing, petitions for certiorari

19 or appellate review) has been finally resolved.

20      1.7.    "FINAL APPROVAL" means the Court's granting final approval of this

21 SETTLEMENT AGREEMENT as being fair, reasonable and adequate pursuant to Federal Rule

22 of Civil Procedure 23(e).

23      1.8.    "FINAL APPROVAL HEARING" means the date of the hearing set by the Court

24 for the purpose of (i) determining the fairness, adequacy and reasonableness of the

25 SETTLEMENT pursuant to class action procedures and requirements; (ii) awarding attorneys'

26 fees and litigation costs and expenses to CLASS COUNSEL; (iii) awarding enhancement

27 payments to REPRESENTATIVE PLAINTIFFS; (iv) approving the PLAN OF ALLOCATION;

28 (v) ordering payment to the SETTLEMENT ADMINISTRATOR; and (vi) entering

1   JUDGMENT.

2       1.9.   FLIGHT CENTRE USA" means Defendant Flight Centre USA, Inc.

3       1.10.  "GROSS SETTLEMENT FUND" means the maximum amount FLIGHT

4   CENTRE USA has agreed to pay as consideration for the settlement and releases described

5   herein, of up to, but not more than, one million eight hundred thousand dollars ($1,800,000)

6   pursuant to section 3 below.  The GROSS SETTLEMENT FUND is exclusive of the employer's

7   portion of any state or federal payroll taxes owed as a result of distribution of funds pursuant to

8   this SETTLEMENT AGREEMENT to PAYMENT ELIGIBLE CLASS MEMBERS as provided

9   by sections 3.2.1 and 6.5.

10       1.11.  "JUDGMENT" means the judgment rendered by the Court pursuant to Federal

11   Rule of Civil Procedure 54.

12       1.12.  "LAWSUIT" means the civil action entitled *Leo Diapo et al. v. Flight Centre*

13   *USA, Inc.*, United States District Court for the Central District of California Case No.  CV09-

14   4790 PSG (RZx)

15       1.13.  "NET SETTLEMENT FUND" means the amount available for distribution to

16   PAYMENT ELIGIBLE CLASS MEMBERS after deduction of (a) attorneys' fees and costs, (b)

17   claims administration expenses, (c) REPRESENTATIVE PLAINTIFF enhancement payments

18   awarded by the Court; and (d) the portion of PAGA PENALTIES payable to the California

19   Labor and Workforce Development Agency (as described in sections 2.2, 5.2, 6, 7 and 8 of this

20   SETTLEMENT AGREEMENT) from the GROSS SETTLEMENT FUND.  The NET

21   SETTLEMENT FUND is inclusive of the employee's portion of the payroll taxes owed as a

22   result of distribution of funds pursuant to the SETTLEMENT AGREEMENT to PAYMENT

23   ELIGIBLE CLASS MEMBERS.

24       1.14.  "NOTICE" means the notice to the SETTLEMENT CLASS MEMBERS

25   pursuant to Federal Rule of Civil Procedure 23(e), generally describing the terms in this

26   SETTLEMENT AGREEMENT, including the proposed PLAN OF ALLOCATION, and the

27   terms of the CLASS COUNSEL's anticipated fee and expense application. The proposed

28   NOTICE is attached as Exhibit B hereto.

1       1.15.   "OPT-OUT DEADLINE" means the deadline set by the Court for

2   SETTLEMENT CLASS MEMBERS to request exclusion from the SETTLEMENT CLASS.

3   The OPT-OUT DEADLINE shall be 30 calendar days from the date of mailing of the NOTICE,

4   or as otherwise ordered by the Court.

5       1.16.   "PAGA PENALTIES" means the $50,000 (payable from the GROSS

6   SETTLEMENT FUND) the SETTLING PARTIES agree shall be allocated to Private Attorney

7   General Act claims as set forth in the First Amended Complaint and described below in section

8   2. The SETTLING PARTIES agree that 25% of PAGA PENALTIES are payable to the

9   California Labor and Workforce Development Agency and that the remaining 75% shall be

10   available for distribution as part of the NET SETTLEMENT FUND.

11       1.17.   "PAYMENT ELIGIBLE CLASS MEMBERS" means CLASS MEMBERS who

12   return a valid, signed CLAIM FORM on or before the CLAIM FORM DEADLINE pursuant to

13   the PLAN OF ALLOCATION.

14       1.18.   "PERSON" means an individual, corporation, partnership, limited partnership,

15   association, joint stock company, estate, legal representative, trust, unincorporated association,

16   government or any political subdivision or agency thereof, and any business or legal entity and

17   the spouses, heirs, predecessors, successors, representatives or assignees of any of them.

18       1.19.   "PLAN OF ALLOCATION" means the plan, approved by the Court and agreed

19   upon by the SETTLING PARTIES, for distribution of the NET SETTLEMENT FUND, as set

20   forth in section 5 of this SETTLEMENT AGREEMENT.

21       1.20.   "PRELIMINARY APPROVAL ORDER" means the order conditionally

22   certifying the SETTLEMENT CLASS, preliminarily approving this SETTLEMENT

23   AGREEMENT, directing NOTICE to be mailed to the SETTLEMENT CLASS MEMBERS,

24   directing the CLAIM FORM to be mailed to the SETTLEMENT CLASS MEMBERS, and

25   setting the date for the FINAL APPROVAL HEARING.

26       1.21.   "REASONABLE ADDRESS VERIFICATION METHODS" means the

27   utilization of the National Change of Address Database maintained by the United States Postal

28   Service to review the accuracy of addresses and, where possible, skip-tracing to obtain updated

KERR
&amp;
WAGSTAFFE
LLP

1  mailing addresses, as well as any other reasonable and practicable means of locating

2  SETTLEMENT CLASS MEMBERS at the discretion of the ADMINISTRATOR.

3       1.22.   "RELATED PARTIES" means each of a PERSON's past or present directors,

4  officers, employees, partners, principals, members, managers, agents, parent companies,

5  subsidiaries, underwriters, issuers, insurers, coinsurers, reinsurers, controlling shareholders, any

6  individual or entity that could be jointly liable with such PERSON, any entity in which the

7  PERSON has a controlling interest, advisors, personal or legal representatives, predecessors,

8  successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, associates,

9  related or affiliated entities, any members of his/her/its immediate families, or any trust of which

10 any PERSON is the settlor, or which is for the benefit of any PERSON and/or member(s) of his

11 or her family.

12      1.23.   "RELEASED CLAIMS" shall mean all claims under state, federal or local law

13 arising out of or related to allegations in the operative complaint of the LAWSUIT, including but

14 not limited to all claims for alleged violation of Labor Code sections 201-204, 221, 226, 226.7,

15 510, 2699-2699.5 and 2802; and Business and Professions Code section 17200 *et seq.* claims

16 arising from such Labor Code violations, during the CLASS PERIOD.

17      1.24.   "RELEASED PERSONS" means FLIGHT CENTRE USA and its RELATED

18 PARTIES.

19      1.25.   "REPRESENTATIVE PLAINTIFFS" means Plaintiffs Leo Diapo, David Liberty,

20 Matthew Catricola, Rick Jahshan, Jason Harrold, Judith Jacques and Karen Abe.

21      1.26.   "SETTLEMENT ACCOUNT" means an interest-bearing escrow account

22 established by the ADMINISTRATOR to hold the settlement funds from the time FLIGHT

23 CENTRE USA deposits the funds pursuant to Paragraph 3.4 herein until such funds are

24 distributed pursuant to the PLAN OF ALLOCATION.  The SETTLEMENT ACCOUNT is

25 intended to be a Qualified Settlement Fund within the meaning of Internal Revenue Code section

26 468B and Treasury Regulation section 1.468B-1, and the administrator of that SETTLEMENT

27 ACCOUNT shall be solely responsible for filing tax returns for the SETTLEMENT ACCOUNT

28 and paying from the SETTLEMENT ACCOUNT any taxes owed with respect to same.  In the

KERR
&
WAGSTAFFE
LLP

1  event it is determined that the SETTLEMENT ACCOUNT is not a Qualified Settlement Fund

2  within the meaning of Treasury Regulation section 1.468B-1, any tax liabilities associated with

3  such determination shall be satisfied solely from the SETTLEMENT ACCOUNT without any

4  recourse against FLIGHT CENTRE USA for additional monies.

5       1.27.   "SETTLEMENT AGREEMENT" means this document, the Class Action

6  Settlement Agreement between the SETTLING PARTIES.

7       1.28.   "SETTLEMENT CLASS" means the class to which the SETTLING PARTIES

8  herein stipulate shall be certified pursuant to Federal Rule of Civil Procedure 23 for settlement

9  purposes only, of all persons employed by FLIGHT CENTRE USA in the State of California, at

10  any time between June 3, 2005 and January 31, 2010, as Travel Consultants, Account Managers,

11  Future Team Leaders, Team Leaders and Business Development Managers, or in any other job

12  title or position whose primary duties were the sale of goods and services.

13       1.29.   "SETTLEMENT CLASS MEMBER(S)" means an individual or individuals who

14  fall(s) within the definition of the SETTLEMENT CLASS, and who has/have not timely filed an

15  exclusion (opt-out request) from participation in the LAWSUITS.

16       1.30.   "SETTLING PARTIES" means, collectively, FLIGHT CENTRE USA and the

17  REPRESENTATIVE PLAINTIFFS on behalf of themselves and the SETTLEMENT CLASS

18  MEMBERS.

19       1.31.   "WORK WEEKS" means the number of days the individual was employed by

20  FLIGHT CENTRE USA, or employed by FLIGHT CENTRE USA in any respective position,

21  during the CLASS PERIOD divided by seven.

22  **2.**    **Private Attorney General Claims**

23       2.1.   The SETTLING PARTIES agree that $50,000 of the GROSS SETTLEMENT

24  FUND shall be allocated to PAGA PENALTIES, and that that 25% of said PAGA PENALTIES

25  are payable to the California Workforce Development Agency and that the remaining 75% shall

26  be available for distribution as a part of the NET SETTLEMENT FUND.

27  **3.**    **The Amount Of The Settlement**

28       3.1.   As consideration for the settlement described herein in this SETTLEMENT

1  AGREEMENT, FLIGHT CENTRE USA agrees to pay up to, but not more than One Million

2  Eight Hundred Thousand Dollars and No Cents ($1,800,000) ("GROSS SETTLEMENT

3  FUND") to settle the claims asserted in the LAWSUIT and any derivative claims.  The GROSS

4  SETTLEMENT FUND shall be inclusive of all payments to PAYMENT ELIGIBLE CLASS

5  MEMBERS; CLASS COUNSEL's attorneys' fees and costs; claims administration expenses;

6  REPRESENTATIVE PLAINTIFF enhancement payments awarded by the Court; and the portion

7  of PAGA PENALTIES payable to the California Labor and Workforce Development Agency.

8  The GROSS SETTLEMENT FUND is exclusive of the employer's portion of any state or

9  federal payroll taxes owed as a result of distribution of funds pursuant to this SETTLEMENT

10  AGREEMENT to PAYMENT ELIGIBLE CLASS MEMBERS.

11      3.2.  The NET SETTLEMENT FUND is the amount available for distribution to

12  PAYMENT ELIGIBLE CLASS MEMBERS on a claims-made basis in accordance with section

13  3.2.1 of this SETTLEMENT AGREEMENT.  The NET SETTLEMENT FUND is determined by

14  subtracting from the GROSS SETTLEMENT FUND CLASS COUNSEL's attorneys' fees and

15  costs; claims administration expenses; REPRESENTATIVE PLAINTIFF enhancement

16  payments awarded by the Court; and the portion of PAGA PENALTIES payable to the

17  California Labor and Workforce Development Agency.  The NET SETTLEMENT FUND is

18  inclusive of the employee's portion of the payroll taxes owed as a result of distribution of funds

19  pursuant to the SETTLEMENT AGREEMENT to PAYMENT ELIGIBLE CLASS MEMBERS.

20      3.2.1.  FLIGHT CENTRE USA agrees to deposit the funds necessary to cover the

21  total amount of the claims received from PAYMENT ELIGIBLE CLASS MEMBERS in

22  accordance with sections 6.4.1 and 6.4.2 below; and in no event shall that deposit be less than

23  60% of the NET SETTLEMENT FUND ("the 60% Floor") plus CLASS COUNSEL's attorneys'

24  fees and costs; claims administration expenses; REPRESENTATIVE PLAINTIFF enhancement

25  payments awarded by the Court; and the portion of PAGA to the SETTLEMENT ACCOUNT in

26  accordance with section 3.4 below.  Any unclaimed amounts below the 60% Floor shall be

27  reallocated on a pro rata basis to all PAYMENT ELIGIBLE CLASS MEMBERS.  If there are

28  monies remaining in the GROSS SETTLEMENT FUND after all timely and properly submitted

1   claims have been paid above the 60% Floor, these monies will be retained by FLIGHT CENTRE

2   USA.  The foregoing is a material term of this SETTLEMENT AGREEMENT.

3         3.3.     The GROSS SETTLEMENT FUND, subject to the conditions set forth in section

4   3.2.1 above, shall be the full extent of FLIGHT CENTRE USA's monetary obligations under this

5   SETTLEMENT AGREEMENT.  The RELEASED PERSONS shall not be liable for any

6   additional amounts in excess of the GROSS SETTLEMENT FUND, including, but not limited

7   to, any pre- or post-judgment interest, any attorneys' fees, expenses, or costs incurred by CLASS

8   COUNSEL (including any costs of NOTICE or administration of this settlement), any expenses

9   incurred by any third-party claims administrator, any expenses incurred by any SETTLEMENT

10  CLASS MEMBER in making a claim or otherwise participating in the Settlement (including any

11  enhancement awards to REPRESENTATIVE PLAINTIFFS), or any taxes or penalties owed by

12  any PERSON in connection with the SETTLEMENT (with the sole exception of any increase

13  made by FLIGHT CENTRE USA to the SETTLEMENT ACCOUNT to cover the employer's

14  portion of any state or federal payroll taxes as provided by section 6.5).

15        3.4.     Deposit of the settlement amount shall be made as follows:

16        3.4.1.  By the later of the EFFECTIVE DATE or one week after entry of an order

17  granting FINAL APPROVAL, FLIGHT CENTRE USA shall wire the total funds required to

18  fully fund the SETTLEMENT ACCOUNT (in accordance with the conditions set forth in section

19  3.2.1 and 6.5) to the SETTLEMENT ACCOUNT.

20        3.5.     The funds shall be held in the SETTLEMENT ACCOUNT in trust for the

21  SETTLEMENT CLASS, and shall remain subject to the jurisdiction of the Court, until such time

22  as such funds are distributed pursuant to this SETTLEMENT AGREEMENT.

23        3.6.     No amounts may be distributed from the SETTLEMENT ACCOUNT to any

24  person until after the EFFECTIVE DATE and pursuant to an order of the Court.  The

25  RELEASED PERSONS shall have no responsibility for, or liability whatsoever with respect to,

26  any claims relating to management of the SETTLEMENT ACCOUNT or distribution of the

27  funds to SETTLEMENT CLASS MEMBERS, the REPRESENTATIVE PLAINTIFFS or

28  CLASS COUNSEL, the payment or withholding of taxes or tax treatment of the amounts paid,

1    or any obligations or losses incurred by any PERSON in connection therewith.

2    **4.      Releases**

3        4.1.     Upon the EFFECTIVE DATE, each of the REPRESENTATIVE PLAINTIFFS

4    and SETTLEMENT CLASS MEMBERS shall be deemed to have, and by operation of the

5    JUDGMENT shall have, fully, finally, and forever released, relinquished and discharged all

6    RELEASED CLAIMS against the RELEASED PERSONS.

7        4.2.     In addition to the foregoing, and on behalf of themselves only, upon the

8    EFFECTIVE DATE the REPRESENTATIVE PLAINTIFFS each fully, finally, and forever

9    release, relinquish and discharge all known or uknown claims, causes of action, liabilities,

10   damages, demands, rights or equitable, legal or administrative relief, under state and/or federal

11   laws, against the RELEASED PERSONS relating to the REPRESENTATIVE PLAINTIFFS'

12   employment with FLIGHT CENTRE USA and all other facts and circumstances between or

13   involving themselves and the RELEASED PERSONS as of the date of preliminary approval of

14   the settlement by the Court.  This is intended to be a complete general release of all claims

15   against the RELEASED PERSONS to the fullest extent allowed by law.   The

16   REPRESENTATIVE PLAINTIFFS expressly waive and relinquish, to the fullest extent

17   permitted by law the provisions, rights, and benefits of Section 1542 of the California Civil Code

18   which provides:

19           A general release does not extend to claims which the creditor does
             not know or suspect to exist in his or her favor at the time of
20           executing the release, which if known by him or her must have
             materially affected his or her settlement with the debtor.

21   Each of the REPRESENTATIVE PLAINTIFFS also waives any and all provisions, rights and

22   benefits conferred by any law of the United States, or any state or territory of the United States,

23   or principle of common law that is similar, comparable or equivalent to Section 1542 of the

24   California Civil Code.  The REPRESENTATIVE PLAINTIFFS may hereafter discover facts in

25   addition to or different from those which he or she now knows or believes to be true, but the

26   REPRESENTATIVE PLAINTIFFS, upon the EFFECTIVE DATE, shall be deemed to have

27   

28   forever settled and released any and all claims as described in this section, known or unknown,

KERR
&
WAGSTAFFE
LLP

suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, that now exist or heretofore have existed upon any theory of law or equity now existing or coming into existence in the future, including, but not limited to, conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts.

4.3.    The REPRESENTATIVE PLAINTIFFS agree that they will not apply for future employment with FLIGHT CENTRE USA or any entity owned by or affiliated with FLIGHT CENTRE USA in the future and that FLIGHT CENTRE USA and/or any entity owned by or affiliated with FLIGHT CENTRE USA are entitled to reject, with or without cause, any application for employment made by the REPRESENTATIVE PLAINTIFFS.

**5.    Settlement Administration and NOTICE**

5.1.    The SETTLING PARTIES agree that the Court should appoint the ADMINISTRATOR to verify and obtain updated address information for the SETTLEMENT CLASS MEMBERS; mail, administer and oversee the NOTICE; issue payment of individual settlement checks to SETTLEMENT CLASS MEMBERS; calculate and make any required employer payroll tax contributions and tax reporting; issue payment of attorneys' fees and costs to CLASS COUNSEL; make any enhancement payments approved by the Court to the REPRESENTATIVE PLAINTIFFS; and otherwise administer the SETTLEMENT AGREEMENT and effectuate the PLAN OF ALLOCATION pursuant to orders of the Court.

5.2.    Upon Court approval, the cost of claims administration shall be deducted from the GROSS SETTLEMENT FUND, and shall include all costs of verifying and obtaining updated address information for the SETTLEMENT CLASS MEMBERS, preparing and providing NOTICES and CLAIM FORMS to the SETTLEMENT CLASS MEMBERS, conducting a reminder postcard mailing approximately two weeks prior to the CLAIM FORM DEADLINE, administering, processing, auditing, and mailing payments to SETTLEMENT CLASS MEMBERS, tax reporting for payments to SETTLEMENT CLASS MEMBERS, and all other duties and responsibilities of the ADMINISTRATOR under this SETTLEMENT

1    AGREEMENT.

2        5.3.    Within one (1) business day after issuance of a PRELIMINARY APPROVAL

3    ORDER, FLIGHT CENTRE USA shall provide the ADMINISTRATOR and CLASS

4    COUNSEL with a list of all SETTLEMENT CLASS MEMBERS' names, addresses, telephone

5    numbers (if known), dates of employment in each relevant position, and social security numbers

6    ("Class Data").

7        5.4.    A NOTICE and postage pre-paid CLAIM FORM shall be sent by the

8    ADMINISTRATOR to all SETTLEMENT CLASS MEMBERS by first class mail, within

9    twenty (20) calendar days after receipt of the Class Data from FLIGHT CENTRE USA ("First

10   Mailing").   Prior to mailing the NOTICE to each SETTLEMENT CLASS MEMBER, the

11   ADMINISTRATOR shall undertake REASONABLE ADDRESS VERIFICATION

12   MEASURES.   The ADMINISTRATOR will be solely responsible for verifying and obtaining

13   updated addresses and contact information for the SETTLEMENT CLASS MEMBERS and for

14   mailing, administering and overseeing the NOTICE process. The ADMINISTRATOR shall

15   maintain a class list with continuously updated contact information for the SETTLEMENT

16   CLASS MEMBERS.

17       5.5.    Unless the ADMINISTRATOR receives a NOTICE returned as undeliverable

18   from the United States Postal Service, that NOTICE shall be deemed received by the

19   SETTLEMENT CLASS MEMBER to whom it was sent.  In the event that, after the First

20   Mailing and at least five (5) days before the OPT-OUT DEADLINE or CLAIM FORM

21   DEADLINE, the NOTICE is returned by the United States Postal Service to the

22   ADMINISTRATOR with a forwarding address for the recipient, the ADMINISTRATOR shall

23   immediately re-mail the NOTICE to that address, the NOTICE will be deemed mailed as of that

24   date ("Second Mailing"), and the recipient will have fifteen (15) calendar days from the date of

25   the Second Mailing to opt out or return his or her CLAIM FORM, or until expiration of the

26   CLAIM FORM DEADLINE, whichever is later.   In the event that after the First Mailing and at

27   least ten (10) days before the OPT-OUT DEADLINE or CLAIM FORM DEADLINE, the

28   NOTICE is returned by the United States Postal Service to the ADMINISTRATOR *without* a

1   forwarding address (i.e., the address is no longer valid and the envelope is marked "Return to
2   Sender" or the equivalent), the ADMINISTRATOR shall immediately utilize all
3   REASONABLE ADDRESS VERIFICATION MEASURES in an effort to ascertain the current
4   address of the particular SETTLEMENT CLASS MEMBER in question.  If a new address is
5   ascertained, the ADMINISTRATOR shall no later than five (5) days before the CLAIM FORM
6   DEADLINE re-send the NOTICE upon receipt of such information ("Second Mailing"), the
7   Notice will be deemed mailed as of the date of the Second Mailing, and the recipient will have
8   fifteen (15) calendar days from the date of the Second Mailing, or until expiration of the CLAIM
9   FORM DEADLINE, whichever is later to opt-out or return his or her CLAIM FORM.

10          5.6.    Individuals seeking to exclude themselves from the SETTLEMENT CLASS (i.e.
11  to "opt out") must submit their request to opt-out to the ADMINSTRATOR pursuant to the
12  instructions in the NOTICE.  Such requests must be postmarked by the OPT-OUT DEADLINE.
13  The ADMINISTRATOR will advise counsel for FLIGHT CENTRE USA and CLASS
14  COUNSEL of the names of all persons who opt-out upon their request but no later than ten (10)
15  business days following the OPT-OUT DEADLINE.

16  **6.      PLAN OF ALLOCATION**

17          6.1.    CLASS MEMBERS must return the signed CLAIM FORM by the CLAIM
18  FORM DEADLINE in order to be eligible for a payout.   Because the U.S. Postal Service does
19  not always postmark pre-paid mail, any CLAIM FORM received by the ADMINISTRATOR
20  without a postmark but within seven (7) calendar days after the CLAIM FORM deadline shall be
21  considered timely.

22          6.2.    In the event a CLAIM FORM is returned unsigned, the ADMINSTRATOR shall
23  immediately notify the SETTLEMENT CLASS MEMBER of the deficiency and the
24  SETTLEMENT CLASS MEMBER shall have twenty (20) calendar days to correct the
25  deficiency.  In the event a potential SETTLEMENT CLASS MEMBER both returns a CLAIM
26  FORM and purports to exclude himself or herself from the SETTLEMENT CLASS, the
27  ADMINISTRATOR shall contact that individual to determine whether he or she wants to
28  withdraw either the opt out or the CLAIM FORM; if the SETTLEMENT CLASS MEMBER

1  does not correct this deficiency, he or she will be considered to have filed a valid CLAIM

2  FORM, and his or her request for exclusion will be deemed invalid.

3      6.3.   If a SETTLEMENT CLASS MEMBER disputes the dates of employment printed

4  on his or her CLAIM FORM, the ADMINISTRATOR shall notify counsel for the SETTLING

5  PARTIES, who shall make a good faith effort to meet and confer and resolve the dispute,

6  including an exchange of pertinent records where available.  If the dispute cannot be resolved, it

7  shall be resolved by the Court.

8      6.4.   Following deduction of the Court-approved attorneys' fees, costs, enhancement

9  payments, claims administration expenses and the PAGA PENALTIES payable to the California

10  Labor and Workforce Development Agency, the NET SETTLEMENT FUND shall be allocated

11  to SETTLEMENT CLASS MEMBERS (subject to the conditions in section 3.2.1 above) on the

12  following basis:

13      6.4.1.  85% of the NET SETTLEMENT FUND shall be allocated for WORK

14  WEEKS in which SETTLEMENT CLASS MEMBERS were employed in the position of Travel

15  Consultant, Account Manager and/or Future Team Leader.  Each SETTLEMENT CLASS

16  MEMBER shall be allocated his or her proportional share as calculated by dividing the number

17  WORK WEEKS he or she was employed in one of those positions by the aggregate WORK

18  WEEKS all SETTLEMENT CLASS MEMBERS were employed in one of those positions.

19      6.4.2.  15% of the NET SETTLEMENT FUND shall be allocated for WORK

20  WEEKS in which SETTLEMENT CLASS MEMBERS were employed in the position of Team

21  Leader and/or Business Development Manager.  Each SETTLEMENT CLASS MEMBER shall

22  be allocated his or her proportional share as calculated by dividing the number WORK WEEKS

23  he or she was employed in one of those positions by the aggregate WORK WEEKS all

24  SETTLEMENT CLASS MEMBERS were employed in one of those positions.

25      6.4.3.  Payouts to PAYMENT ELIGIBLE CLASS MEMBERS shall occur in

26  accordance with section 3.2.1.  Any unclaimed amounts below the 60% Floor shall be

27  reallocated on a pro rata basis to all PAYMENT ELIGIBLE CLASS MEMBERS in proportion

28  to their allocated amounts as described in section 6.4.1 and 6.4.2, above.

1         6.4.4.   Payments to PAYMENT ELIGIBLE CLASS MEMBERS shall be

2   considered 1/3 W-2 wages, 1/3 1099 expense reimbursement, and 1/3 1099 interest and

3   penalties.

4         6.5.   The ADMINISTRATOR shall make appropriate tax withholdings from payments

5   to PAYMENT ELIGIBLE CLASS MEMBERS herein as required by law and shall issue to each

6   PAYMENT ELIGIBLE CLASS MEMBER appropriate W-2 and/or 1099 tax forms with respect

7   to such payments, and file those tax forms with the appropriate government agencies as required

8   by law.  The ADMINISTRATOR shall calculate any required employer payroll tax contributions

9   with respect to W-2 payments to PAYMENT ELIGIBLE CLASS MEMBERS under this

10  SETTLEMENT AGREEMENT, and shall inform counsel for FLIGHT CENTRE USA of the

11  total amount of such employer payroll tax contributions.  If there are insufficient unallocated

12  funds in the SETTLEMENT ACCOUNT to cover the employer's payroll tax contributions,

13  FLIGHT CENTRE USA shall deposit additional funds into the SETTLEMENT ACCOUNT to

14  cover the employer's payroll tax contributions to the ADMINISTRATOR.

15        6.6.   Within ten (10) business days following the CLAIM FORM DEADLINE, or, if

16  after the CLAIM FORM DEADLINE time remains for correction of unsigned CLAIM FORMS

17  pursuant to section 6.2 then within five (5) business days following the latest period provided by

18  section 6.2, the ADMINISTRATOR will advise counsel for FLIGHT CENTRE USA and

19  CLASS COUNSEL of the names of all PAYMENT ELIGIBLE CLASS MEMBERS, the

20  calculation of total amount of funds to be distributed to each such individual, and the employer's

21  payroll tax contributions pursuant to the terms of this SETTLEMENT AGREEMENT.  The data

22  required by this section will be provided in Microsoft Excel or a similar electronic format.

23  FLIGHT CENTRE USA shall have the right to review, approve or dispute the tax allocation

24  calculations before distribution to PAYMENT ELIGIBLE CLASS MEMBERS.

25        6.7.   The SETTLEMENT ADMINISTRATOR shall mail the checks for each

26  individual's share to the PAYMENT ELIGIBLE CLASS MEMBERS within ten (10) business

27  days after the funds are received.

28        6.8.   Along with the settlement checks, the SETTLEMENT ADMINISTRATOR shall

1   include a wage statement showing the taxes and withholdings taken from that individual's gross

2   share of the NET SETTLEMENT FUND. At the same time that these checks are sent to the

3   PAYMENT ELIGIBLE CLASS MEMBERS, the SETTLEMENT ADMINISTRATOR shall

4   transmit the employer and employee taxes and withholdings, where applicable, to the appropriate

5   governmental authority.

6          6.9.    Settlement checks shall remain negotiable for a period of one hundred eighty

7   (180) days from the date of mailing. The ADMINISTRATOR shall issue replacement checks to

8   PAYMENT ELIGIBLE CLASS MEMBERS on request following cancellation of the original

9   check and appropriate measures to prevent theft or fraud, which shall be determined by the

10  ADMINISTRATOR. If any dispute over the issuance of replacement checks arises, the

11  ADMINISTRATOR shall notify counsel for the SETTLING PARTIES, who shall make a good

12  faith effort to meet and confer and resolve the dispute. If the dispute cannot be resolved, it shall

13  be resolved by the ADMINISTRATOR in its sole discretion.

14         6.10.   CLASS MEMBERS who fail to negotiate their check(s) in a timely fashion shall,

15  like all SETTLEMENT CLASS MEMBERS, remain subject to the terms of the JUDGMENT.

16  On a bi-monthly basis after mailing settlement payments, the ADMINISTRATOR shall advise

17  counsel for the SETTLING PARTIES of the names of SETTLEMENT CLASS MEMBERS who

18  have not yet cashed their settlement checks, as well as the amounts of the uncashed checks.

19         6.11.   In the event a CLASS MEMBER fails to cash the settlement payment check sent

20  to him or her, the ADMINISTRATOR will treat that CLASS MEMBER'S payment pursuant to

21  the terms of California's Unclaimed Property Law, California Code of Civil Procedure sections

22  1500 *et seq.*, and specifically pursuant to California Code of Civil Procedure section 1513(g).

23         6.12.   Any order or proceedings relating to implementation of the PLAN OF

24  ALLOCATION, or any appeal from any order relating thereto or reversal or modification

25  thereof, shall not operate to terminate or cancel this SETTLEMENT AGREEMENT, or to affect

26  or delay the finality of the JUDGMENT approving this SETTLEMENT AGREEMENT and the

27  SETTLEMENT of this action set forth herein. In the event the PLAN OF ALLOCATION is

28  materially modified or reversed on appeal such that a new PLAN OF ALLOCATION is

KERR
&
WAGSTAFFE
LLP

1   required, CLASS COUNSEL and FLIGHT CENTRE USA's COUNSEL shall meet and confer

2   and submit a new revised PLAN OF ALLOCATION to the Court.

3   **7.      Attorneys' Fees and Costs**

4          7.1.    CLASS COUNSEL intend to ask the Court for an award of reasonable attorneys'

5   fees not to exceed twenty-five percent of the GROSS SETTLEMENT FUND, as well as actual

6   reasonable costs not to exceed $95,000 incurred in connection with the LAWSUIT.  FLIGHT

7   CENTRE USA agrees not to oppose that request.  If the Court awards CLASS COUNSEL less

8   than the attorneys' fees and costs requested by CLASS COUNSEL, such amounts not awarded

9   shall remain part of the NET SETTLEMENT FUND, except that if CLASS COUNSEL notifies

10  FLIGHT CENTRE USA and the Court that they intend to appeal the amount of the award of

11  attorneys' fees or costs, the difference of the amount awarded and the total amount sought by

12  CLASS COUNSEL shall not be distributed as part of the GROSS SETTLEMENT FUND until

13  the appeal is finalized or CLASS COUNSEL authorizes such payment or contribution to the

14  NET SETTLEMENT AMOUNT for distribution to CLAIMANTS.

15         7.2.    The allowance or disallowance by the Court of any particular amount of

16  attorneys' fees and costs is not a condition of this Settlement, and is to be considered by the

17  Court separately from the fairness, reasonableness and adequacy of the Settlement set forth in

18  this SETTLEMENT AGREEMENT.

19  **8.      REPRESENTATIVE PLAINTIFF Enhancement Payments**

20         8.1.    The REPRESENTATIVE PLAINTIFFS shall be entitled to ask the Court for

21  approval of $5,000 enhancement payments, each, from the GROSS SETTLEMENT FUND to

22  compensate them for their participation as REPRESENTATIVE PLAINTIFFS, subject to

23  approval from this Court.  FLIGHT CENTRE USA agrees not to oppose any such request.  The

24  enhancement payments will be in addition to any amount the REPRESENTATIVE

25  PLAINTIFFS may be paid as a SETTLEMENT CLASS MEMBER.  Approval or disapproval of

26  this term by the Court is not a condition of settlement.   REPRESENTATIVE PLAINTIFFS will

27  receive from the ADMINISTRATOR an IRS Form 1099 for their respective enhancement

28  payments.

KERR
WAGSTAFFE
LLP

8.2.    If the Court awards the REPRESENTATIVE PLAINTIFFS Enhancement Payments in amounts that are less than what they request, such amounts not awarded shall remain part of the NET SETTLEMENT FUND, except that if CLASS COUNSEL notifies FLIGHT CENTRE USA and the Court that they intend to appeal the amount of the award of the enhancement payments, the difference of the amount awarded and the total amount sought by CLASS COUNSEL shall not be distributed as part of the GROSS SETTLEMENT FUND until the appeal is finalized or CLASS COUNSEL authorizes such payment or contribution to the NET SETTLEMENT AMOUNT for distribution to CLAIMANTS.

**9.    Preliminary Approval Order And Final Approval Hearing**

9.1.    CLASS COUNSEL shall submit this SETTLEMENT AGREEMENT to the Court and shall apply for entry of the PRELIMINARY APPROVAL ORDER, requesting *inter alia*, (i) certification of the SETTLEMENT CLASS for settlement purposes; (ii) appointment of the ADMINISTRATOR; (iii) approval for the mailing to the CLASS of the NOTICE and the CLAIM FORM; (iv) establishment of the OPT-OUT DEADLINE; (v) establishment of the CLAIM FORM DEADLINE; (vi) setting a FINAL APPROVAL HEARING date and briefing schedule; (vii) establishment of a deadline for objections to final approval; and (viii) a determination that the date on which the Court grants preliminary approval of the SETTLEMENT is the date that the SETTLEMENT is deemed filed for purposes of providing notice to the appropriate officials pursuant to 28 U.S.C. § 1715.

9.2.    CLASS COUNSEL shall prepare all pleadings necessary to obtain FINAL APPROVAL of the SETTLEMENT of the LAWSUITS, including but not limited to a motion for preliminary approval, and motion for final approval.  CLASS COUNSEL shall provide such pleadings and forms to FLIGHT CENTRE USA's counsel for approval at least one week prior to submitting them to the Court and/or mailing them to the CLASS.  FLIGHT CENTRE USA's counsel shall not unreasonably withhold approval of such pleadings and forms.

**10.    Conditions of Settlement: Effect of Disapproval or Termination**

10.1.    The SETTLING PARTIES shall have the option to withdraw from and terminate the Settlement set forth in this SETTLEMENT AGREEMENT, and to render this

KERR
&
WAGSTAFFE
LLP

1    SETTLEMENT AGREEMENT null and void in the event that (1) the terms of this

2    SETTLEMENT AGREEMENT are not approved by the Court and JUDGMENT is not entered,

3    or (2) the JUDGMENT is reversed or materially modified on appeal, or (3) the EFFECTIVE

4    DATE is not reached.  If the Court does not grant either preliminary or final approval of the

5    SETTLEMENT, the parties will not stipulate to class certification and FLIGHT CENTRE USA

6    reserves the right to contest class certification.

7         10.2.   In the event that 5% of the SETTLEMENT CLASS elect to affirmatively request

8    exclusion – or "opt out" – of the Settlement, FLIGHT CENTRE USA shall have the option to

9    void the SETTLEMENT AGREEMENT within ten (10) days after receiving notice from the

10   ADMINISTRATOR that 5% or more of the SETTLEMENT CLASS has opted out of the

11   settlement.

12        10.3.   In the event that this SETTLEMENT AGREEMENT is terminated or fails to

13   become effective in accordance with its material terms, this SETTLEMENT AGREEMENT and

14   all negotiations and proceedings relating hereto shall be without prejudice as to the rights of the

15   SETTLING PARTIES, who shall be restored to their respective positions in the LAWSUITS as

16   of the day preceding the signing of this SETTLEMENT AGREEMENT.  In such event, the

17   terms and provisions this SETTLEMENT AGREEMENT shall have no further force and effect

18   with respect to the SETTLING PARTIES and shall not be used in the LAWSUITS or in any

19   other proceeding for any purpose; and any judgment or order entered by the Court in accordance

20   with the terms of this SETTLEMENT AGREEMENT shall be treated as vacated, nunc pro tunc.

21   In such event, all funds in the SETTLEMENT ACCOUNT shall be returned to FLIGHT

22   CENTRE USA within three (3) calendar days after the SETTLING PARTIES jointly instruct the

23   ADMINISTRATOR to do so.

24        10.4.   In the event this SETTLEMENT AGREEMENT is terminated or fails to become

25   effective in accordance with its material terms, the SETTLING PARTIES shall, within two

26   weeks of such cancellation, jointly request a status conference with the Court to be held on the

27   Court's first available date.  At such status conference, the SETTLING PARTIES shall ask the

28   Court's assistance in scheduling continued proceedings in the LAWSUITS as between the

1   SETTLING PARTIES.  Pending such status conference or the expiration of sixty (60) days from

2   the SETTLING PARTIES' joint request for a status conference, whichever occurs first, none of

3   the SETTLING PARTIES shall file or serve any further motions or discovery requests on any of

4   the other SETTLING PARTIES in connection with the LAWSUITS, nor shall any response be

5   due by any SETTLING PARTY to any outstanding discovery by any other SETTLING PARTY.

6   **11.    Communications Regarding The Settlement Agreement**

7        11.1.    The SETTLING PARTIES and their attorneys, agents, employees and

8   representatives shall not discourage SETTLEMENT CLASS MEMBERS from filing claims or

9   opting out of the settlement.

10   **12.    Miscellaneous Provisions**

11        12.1.    The SETTLING PARTIES (i) acknowledge that it is their intent to consummate

12   the SETTLEMENT AGREEMENT; and (ii) agree to cooperate to the extent necessary to

13   effectuate and implement all terms and conditions of this SETTLEMENT AGREEMENT.  The

14   SETTLING PARTIES agree to cooperate and take all steps necessary and appropriate to dismiss

15   with prejudice the LAWSUIT.

16        12.2.    FLIGHT CENTRE USA has denied and continues to deny each and all of the

17   claims alleged in the LAWSUIT.  Neither this SETTLEMENT AGREEMENT nor the

18   Settlement, nor any act performed or document executed pursuant to or in furtherance of either

19   this SETTLEMENT AGREEMENT or the Settlement (i) is or may be deemed to be, or may be

20   used as, an admission, or evidence of the validity of any RELEASED CLAIM, or of any

21   wrongdoing by or liability of any of the SETTLING PARTIES, or the accuracy of any allegation

22   made by the RELEASED PARTIES or REPRESENTATIVE PLAINTIFFS or CLASS

23   COUNSEL; (ii) is or may be deemed to be, or may be used as, an admission, or evidence of

24   wrongdoing or liability, or fault or omission of any of the SETTLING PARTIES in any civil,

25   criminal or administrative proceeding in any court, administrative agency or other tribunal, other

26   than in such proceedings as may be necessary to consummate or enforce this SETTLEMENT

27   AGREEMENT, the Settlement or the JUDGMENT.  The SETTLING PARTIES, however, may

28   file this SETTLEMENT AGREEMENT and/or the JUDGMENT in any action that may be

1  brought against them in order to support a defense or counterclaim based on principles of res

2  judicata, collateral estoppel, release, good faith settlement, judgment bar, offset or reduction, or

3  any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

4  　　　12.3.   This SETTLEMENT AGREEMENT may be amended or modified only by a

5  written instrument signed by or on behalf of all SETTLING PARTIES or their respective

6  successors-in-interest.

7  　　　12.4.   This SETTLEMENT AGREEMENT constitutes the entire agreement among the

8  parties hereto, and no representations, warranties or inducements have been made to any party

9  concerning this SETTLEMENT AGREEMENT, other than the representations, warranties and

10  covenants contained and memorialized in those documents.  This SETTLEMENT

11  AGREEMENT formalizes and supersedes the Settlement Terms previously agreed to by the

12  parties.

13  　　　12.5.   If any provision or term of this SETTLEMENT AGREEMENT is determined to

14  be void or unenforceable, the remaining terms and provisions shall remain valid and enforceable.

15  　　　12.6.   Unless otherwise specifically provided herein, all notices, demands, or other

16  communications given hereunder shall be in writing and shall be deemed to have been duly

17  given as of the third business day after mailing by United States registered or certified mail,

18  return receipt requested, addressed as follows:

19  　　　　　　　　To SETTLEMENT CLASS MEMBERS:

20  　　　　　　　　To the last known address of the CLASS MEMBER(S) in question.

21  　　　　　　　　To CLASS COUNSEL:

22  　　　　　　　　Michael Ng
23  　　　　　　　　KERR & WAGSTAFFE LLP
　　　　　　　　　100 Spear Street, Suite 1800
24  　　　　　　　　San Francisco, CA 94105

25  　　　　　　　　To FLIGHT CENTRE USA:

26  　　　　　　　　Elizabeth Staggs Wilson
27  　　　　　　　　LITTLER MENDELSON, A PROFESSIONAL CORPORATION
　　　　　　　　　2049 Century Park East, 5th Floor
　　　　　　　　　Los Angeles, CA 90067-3107

28  　　　12.7.   This SETTLEMENT AGREEMENT may be executed in one or more

KERR
&
WAGSTAFFE
LLP

1  counterparts. All executed counterparts, and each of them, shall be deemed to be one and the

2  same instrument.  A complete set of originally executed counterparts shall be filed with the

3  Court.  Subject to Court approval, this SETTLEMENT AGREEMENT shall be binding on the

4  SETTLING PARTIES as of the date and year the SETTLEMENT AGREEMENT is fully

5  executed in one or more counterparts.  Facsimile and/or electronic PDF copies of the signatures

6  shall be deemed as effective as originals.

7      12.8.   The SETTLING PARTIES agree to comply with the notice requirements of 28

8  U.S.C. § 1715.  It is the intent of the parties that the SETTLEMENT AGREEMENT and

9  JUDGMENT be binding upon the SETTLING PARTIES and the SETTLEMENT CLASS, as

10  well as their successors, assigns, heirs, executors, and administrators.

11      12.9.   The Court shall retain jurisdiction with respect to implementation and

12  enforcement of the terms of this SETTLEMENT AGREEMENT, and all SETTLING PARTIES,

13  SETTLEMENT CLASS MEMBERS, and counsel for each hereby specially submit to the

14  jurisdiction of the Court for the purposes of implementing and enforcing this SETTLEMENT

15  AGREEMENT.

16      12.10.  The SETTLING PARTIES acknowledge and agree that this SETTLEMENT

17  AGREEMENT was negotiated and drafted jointly by the SETTLING PARTIES, that the terms

18  of this SETTLEMENT AGREEMENT shall be fairly construed, and that any rule of construction

19  to the effect that any ambiguities herein should be resolved against the drafting party shall not be

20  employed in the interpretation of this SETTLEMENT AGREEMENT or any amendments,

21  modifications or exhibits hereto or thereto.

22      12.11.  The SETTLING PARTIES acknowledge and agree that this SETTLEMENT

23  AGREEMENT reflects their good faith compromise of the claims raised in the LAWSUIT,

24  based on their assessment of the mutual risks and costs of further litigation and the assessments

25  of their counsel.  The SETTLING PARTIES are represented by competent counsel, and they

26  have had an opportunity to consult with counsel prior to execution of this SETTLEMENT

27  AGREEMENT.

28

KERR
WAGSTAFFE
&
LLP

1      12.12.  The SETTLING PARTIES waive their right to file an appeal and/or a writ or any

2  other challenge whatsoever to the terms of this SETTLEMENT AGREEMENT or the

3  JUDGMENT entered thereupon, but reserve their right to file an appeal or writ petition

4  challenging an order denying approval of any term or condition of this SETTLEMENT

5  AGREEMENT, or of any order denying or granting the requested attorneys' fees, costs, or

6  CLASS REPRESENTATIVE incentive payments in an amount different from that set forth

7  herein.

8      12.13.  The SETTLING PARTIES acknowledge and agree that (i) they have been

9  advised of their rights to consult an attorney before signing this Agreement, and are hereby so

10  advised, (ii) they have consulted with their attorneys, (iii) they fully understand the provisions of

11  this Agreement and their effect, (iv) their attorneys have explained all provisions of this

12  Agreement and their effect, and (v) they are signing this Agreement voluntarily and free from

13  duress.

14

15      IN WITNESS WHEREOF, the parties hereto have caused this SETTLEMENT

16  AGREEMENT to be executed.

17

18  DATED:  April __, 2010

                        _____

19                               Leo Diapo
                             Representative Plaintiff

20  DATED:  April __, 2010

                         _____

21                               David Liberty
                             Representative Plaintiff

22

23  DATED:  April __, 2010

                         _____

24                               Matthew Catricola
                             Representative Plaintiff

25

26  DATED:  April __, 2010

                         _____

27                               Rick Jahshan
                             Representative Plaintiff

28

KERR
&
WAGSTAFFE
LLP

12.12. The SETTLING PARTIES waive their right to file an appeal and/or a writ or any other challenge whatsoever to the terms of this SETTLEMENT AGREEMENT or the JUDGMENT entered thereupon, but reserve their right to file an appeal or writ petition challenging an order denying approval of any term or condition of this SETTLEMENT AGREEMENT, or of any order denying or granting the requested attorneys' fees, costs, or CLASS REPRESENTATIVE incentive payments in an amount different from that set forth herein.

12.13. The SETTLING PARTIES acknowledge and agree that (i) they have been advised of their rights to consult an attorney before signing this Agreement, and are hereby so advised, (ii) they have consulted with their attorneys, (iii) they fully understand the provisions of this Agreement and their effect, (iv) their attorneys have explained all provisions of this Agreement and their effect, and (v) they are signing this Agreement voluntarily and free from duress.

IN WITNESS WHEREOF, the parties hereto have caused this SETTLEMENT AGREEMENT to be executed.

DATED: April 16, 2010

_____
Leo Diapo
Representative Plaintiff

DATED: April __, 2010

_____
David Liberty
Representative Plaintiff

DATED: April __, 2010

_____
Matthew Catricola
Representative Plaintiff

DATED: April __, 2010

_____
Rick Jahshan
Representative Plaintiff

1    12.12.  The SETTLING PARTIES waive their right to file an appeal and/or a writ or any
2    other challenge whatsoever to the terms of this SETTLEMENT AGREEMENT or the
3    JUDGMENT entered thereupon, but reserve their right to file an appeal or writ petition
4    challenging an order denying approval of any term or condition of this SETTLEMENT
5    AGREEMENT, or of any order denying or granting the requested attorneys' fees, costs, or
6    CLASS REPRESENTATIVE incentive payments in an amount different from that set forth
7    herein.

8    12.13.  The SETTLING PARTIES acknowledge and agree that (i) they have been
9    advised of their rights to consult an attorney before signing this Agreement, and are hereby so
10   advised, (ii) they have consulted with their attorneys, (iii) they fully understand the provisions of
11   this Agreement and their effect, (iv) their attorneys have explained all provisions of this
12   Agreement and their effect, and (v) they are signing this Agreement voluntarily and free from
13   duress.

14

15   IN WITNESS WHEREOF, the parties hereto have caused this SETTLEMENT
16   AGREEMENT to be executed.

17

18   DATED:  April ___, 2010
                                              _____
19                                            Leo Diapo
                                              Representative Plaintiff
20   DATED:  April 15, 2010
                                              _____
21                                            David Liberty
                                              Representative Plaintiff
22

23   DATED:  April ___, 2010
                                              _____
24                                            Matthew Catricola
                                              Representative Plaintiff
25

26   DATED:  April ___, 2010
                                              _____
27                                            Rick Jahshan
                                              Representative Plaintiff
28

KERR
WAGSTAFFE
LLP

Case No. CV 09-4790 PSG (RZX)         - 23/24 -              SETTLEMENT AGREEMENT

1    12.12.  The SETTLING PARTIES waive their right to file an appeal and/or a writ or any
2 other challenge whatsoever to the terms of this SETTLEMENT AGREEMENT or the
3 JUDGMENT entered thereupon, but reserve their right to file an appeal or writ petition
4 challenging an order denying approval of any term or condition of this SETTLEMENT
5 AGREEMENT, or of any order denying or granting the requested attorneys' fees, costs, or
6 CLASS REPRESENTATIVE incentive payments in an amount different from that set forth
7 herein.

8    12.13.  The SETTLING PARTIES acknowledge and agree that (i) they have been
9 advised of their rights to consult an attorney before signing this Agreement, and are hereby so
10 advised, (ii) they have consulted with their attorneys, (iii) they fully understand the provisions of
11 this Agreement and their effect, (iv) their attorneys have explained all provisions of this
12 Agreement and their effect, and (v) they are signing this Agreement voluntarily and free from
13 duress.

14

15    IN WITNESS WHEREOF, the parties hereto have caused this SETTLEMENT
16 AGREEMENT to be executed.

17

18 DATED: April ___, 2010

19                                          _____
                                           Leo Diapo
20                                          Representative Plaintiff

21 DATED: April ___, 2010

22                                          _____
                                           David Liberty
23                                          Representative Plaintiff

24 DATED: April ___ 2010

25                                          _____
                                           Matthew Catricola
26                                          Representative Plaintiff

27 DATED: April ___, 2010

28                                          _____
                                           Rick Jahshan
                                           Representative Plaintiff

KERR
&
WAGSTAFFE

1     12.12.  The SETTLING PARTIES waive their right to file an appeal and/or a writ or any

2  other challenge whatsoever to the terms of this SETTLEMENT AGREEMENT or the

3  JUDGMENT entered thereupon, but reserve their right to file an appeal or writ petition

4  challenging an order denying approval of any term or condition of this SETTLEMENT

5  AGREEMENT, or of any order denying or granting the requested attorneys' fees, costs, or

6  CLASS REPRESENTATIVE incentive payments in an amount different from that set forth

7  herein.

8     12.13.  The SETTLING PARTIES acknowledge and agree that (i) they have been

9  advised of their rights to consult an attorney before signing this Agreement, and are hereby so

10  advised, (ii) they have consulted with their attorneys, (iii) they fully understand the provisions of

11  this Agreement and their effect, (iv) their attorneys have explained all provisions of this

12  Agreement and their effect, and (v) they are signing this Agreement voluntarily and free from

13  duress.

14

15     IN WITNESS WHEREOF, the parties hereto have caused this SETTLEMENT

16  AGREEMENT to be executed.

17

18  DATED: April ___, 2010

                              Leo Diapo
19                                Representative Plaintiff

20  DATED: April ___, 2010

21                                David Liberty
22                                Representative Plaintiff

23  DATED: April ___, 2010

24                                Matthew Catricola
25                                Representative Plaintiff

26  DATED: April 15, 2010

27                                Rick Jahshan
                                Representative Plaintiff

28

DATED: April 19, 2010

_____
Jason Harrold
Representative Plaintiff

DATED: April ___, 2010

_____
Judith Jacques
Representative Plaintiff

DATED: April ___, 2010

_____
Karen Abe
Representative Plaintiff

DATED: April ___, 2010          FLIGHT CENTRE USA, INC.

_____
By:   Daniella Bonanno
Its:   Legal Services Director

DATED: April __, 2010

_____
Jason Harrold
Representative Plaintiff

DATED: April 28, 2010

_____
Judith Jacques
Representative Plaintiff

DATED: April __, 2010

_____
Karen Abe
Representative Plaintiff

DATED: April __, 2010

FLIGHT CENTRE USA, INC.

_____
By:  Natalie Benson
Its:  Chief Financial Officer

1    DATED: April ___, 2010                    _____
                                                Jason Harrold
2                                               Representative Plaintiff

3

4    DATED: April ___, 2010                    _____
                                                Judith Jacques
5                                               Representative Plaintiff

6

7    DATED: April 21, 2010                     _____
                                                Karen Abe
8                                               Representative Plaintiff

9

10   DATED: April ___, 2010                    FLIGHT CENTRE USA, INC.

11                                             _____
                                                By: Natalie Benson
12                                              Its:  Chief Financial Officer

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KERR
&
WAGSTAFFE
LLP

1    DATED:  April ___, 2010          _____
                                      Jason Harrold
2                                     Representative Plaintiff

3

4    DATED:  April ___, 2010          _____
                                      Judith Jacques
5                                     Representative Plaintiff

6

7    DATED:  April ___, 2010          _____
                                      Karen Abe
8                                     Representative Plaintiff

9
     DATED:  April 20, 2010           FLIGHT CENTRE USA, INC.
10

11
                                      By:  Natalie Benson
12                                    Its:  Chief Financial Officer

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

EXHIBIT A

# CLAIM FORM

U.S. District Court for the Central District of California

*Diapo et al. v. Flight Centre USA, Inc.*, Case No: CV-09-4790 PSG

**YOU MUST COMPLETE AND RETURN THIS CLAIM FORM TO RECEIVE A SETTLEMENT PAYMENT.**

«Barcode» Claim #: «Claim»-«CkDig»
«FName» «LName»
«Addr1» «Addr2»
«City», «ST» «Zip»

Name / Mailing Address Changes:

_____

_____

_____

**THE POSTMARK DEADLINE FOR THIS FORM IS _____, 2010.**

RETURN THIS FORM BY MAIL TO
Claims Administrator
c/o Gilardi & Co. LLC
P.O. Box 8060
San Rafael, CA 94912-8060
[telephone]

**A postage pre-paid envelope has been included for your use in returning this form.**

**ACKNOWLEDGMENT AND RELEASE OF CLAIMS:** The undersigned declares that he or she is the person identified above, has read the Notice of Pendency of Class Action, and accepts the Release and other terms of the Settlement described in the Notice of Class Action Settlement (and on the reverse of this Claim Form) in exchange for the settlement payment.

Dated: _____

_____
**Signature**

_____
**Print Name**

**Telephone # (so the Administrator can contact you if necessary) (_____) _____**

*See reverse side*

OPTIONAL CHALLENGE TO WORK MONTHS

Your settlement payment is based on the following information about your job position and dates of employment with Flight Centre USA, Inc. ("Flight Centre USA") in California between June 3, 2005 and January 31, 2010.

| Account Manager, Future Team Leader, or Travel Consultant | month, day, year – month, day, year |
|---|---|
| Team Leader or Business Development Manager | month, day, year – month, day, year |

If you believe that the position and/or dates months listed above are incorrect, please explain why and what you believe the correct facts are, and attach to this Claim Form any information or documents that support your position: _____

_____

_____

I submit this Claim Form under the terms of the proposed Class Action Settlement Agreement ("Settlement Agreement") referenced in the Order of Preliminary Approval. I also submit to the jurisdiction of the United States District Court with respect to my claim as a Settlement Class Member and for purposes of enforcing the release of claims set forth below and in the Settlement Agreement. The full and precise terms of the proposed Settlement Agreement are on file with the Court. I further acknowledge that I am bound by and subject to the terms of any judgment that may be entered in this class action.

I understand that under the terms of the Settlement Agreement, I am hereby fully, finally, and forever released, relinquished and discharged all claims under state, federal or local law arising out of or related to allegations in the operative complaint of the Lawsuit, including but not limited to all claims for alleged violation of Labor Code sections 201-204, 221, 226, 226.7, 510, 2699-2699.5 and 2802; and Business and Professions Code section 17200 et seq. claims arising from such Labor Code violations, during the Class Period (June 3, 2005 until January 31, 2010) against Flight Centre USA, Inc. and each of its past or present directors, officers, employees, partners, principals, members, managers, agents, parent companies, subsidiaries, underwriters, issuers, insurers, co-insurers, reinsurers, controlling shareholders, any individual or entity that could be jointly liable with such person, any entity in which the person has a controlling interest, advisors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, associates, related or affiliated entities, any members of his/her/its immediate families, or any trust of which any person is the settlor, or which is for the benefit of any person and/or member(s) of his or her family.

I understand that Flight Centre USA will not retaliate against me because of my participation as a Settlement Class Member in this settlement, including but not limited to the submission of a claim.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing statements are true and correct.

EXHIBIT B

## NOTICE OF CLASS ACTION SETTLEMENT
### United States District Court for the Central District of California

**If you worked for Flight Centre USA, Inc. in California as an Account Manager, Future Team Leader, Travel Consultant, Team Leader, Business Development Manager, or in any other job title or position whose primary duties were the sale of goods or services at any time between June 3, 2005 and January 31, 2010 you may be entitled to money from a class action settlement.**

*A Court authorized this notice.*
*This is not a solicitation from a lawyer. You are not being sued.*

- Former employees of Flight Centre USA, Inc. ("Flight Centre USA") in California have sued Flight Centre USA alleging violations of California's laws governing overtime, meal and rest breaks, pay on termination, reimbursement of expenses, wage deductions, paystub requirements, and unfair business practices related to these issues.

- For purposes of settlement only, the Court has allowed the lawsuit to proceed as a class action on behalf of all employees who worked for Flight Centre USA as an Account Manager, Future Team Leader, Travel Consultant, Team Leader, or Business Development Manager in California at any time between June 3, 2005 and January 31, 2010.  The Court has not made any determination that Flight Centre USA did anything wrong.

- The proposed settlement involves Flight Centre USA, without any admission of liability, paying $1,800,000 to settle the claims asserted in the lawsuit.  The settlement resolves the lawsuit; it avoids costs and risks to the class members from continuing the lawsuit; pays money to class members like you; and releases Flight Centre USA and its related parties from liability regarding the alleged claims.

- Court appointed lawyers for the class members will ask the Court for up to $450,000 plus actual reasonable expenses not to exceed $95,000 to be paid from the settlement fund as fees and expenses for investigating the facts, litigating the case, negotiating the settlement, and administering the settlement.

- Your legal rights are affected whether you act, or don't act.  Read this notice carefully.

| Your Legal Rights and Options | |
| --- | --- |
| **Return a Claim Form**<br><br>**Claim Forms Are Due By _____.** | Receive payment in the mail.  If you move, make sure you update your address with the administrator so you get your check. |
| **Do Nothing** | Stay in the lawsuit, but get no payment.  Lose your right to file your own lawsuit against Flight Centre USA. |
| **Exclude Yourself**<br><br>**Exclusions are Due By _____.** | Decide not to participate in the lawsuit. Get no money from the settlement.  Keep your right to sue Flight Centre USA separately if you want to do that. |
| **Object** | Write to the Court if you don't agree with the terms of the settlement. |
| **Go To A Hearing** | Ask to speak to the Court about the fairness of the settlement. |

- These rights and options **– and the deadlines to exercise them –** are explained in this notice.

- The Court in charge of this case still has to decide whether to approve the settlement.  Payments will be made if the Court approves the settlement and after any appeals are resolved.  Please be patient.

- Any questions?  More details are provided below.

1

## BASIC INFORMATION

### 1.      Why did I get this notice?

The Defendants' records indicate that you were employed by Flight Centre USA as an Account Manager,  Future Team Leader, Travel Consultant, Team Leader, or Business Development Manager in California at some time between June 3, 2005 and January 31, 2010.  This notice explains that for settlement purposes only, the Court has allowed, or "certified," a class action lawsuit that may affect you and that a settlement has been reached in that case.  You have legal rights and options that you may exercise at this time.

### 2.      What is this lawsuit about?

This lawsuit a case that was filed by seven former Flight Centre USA employees.  The case name is *Leo Diapo, David Liberty, Matthew Catricola, Rick Jahshan, Jason Harrold, Judith Jacques, and Karen Abe v. Flight Centre USA, Inc.*, United States District Court for the Central District of California Case No. CV-09-4790 PSG.

The case alleges that Flight Centre USA failed to pay overtime, failed to permit meal and rest breaks, failed to pay all wages due on termination, failed to reimburse expenses, took improper wage deductions, failed to provide lawful wage statements, and committed unfair or unlawful business practices with regard to the above issues.

Flight Centre USA has denied all of the allegations, denies any liability for the claims asserted in the Complaint, and believes that it has at all times complied with California law.  Nevertheless, Flight Centre USA has agreed to settle this matter having considered that further conduct of the lawsuit would be lengthy and expensive.

The Court has made no final determinations in this matter.

### 3.      Who is included in the Class and who is entitled to part of the settlement?

The Class is defined as: all persons employed by Flight Centre USA in the State of California, at any time between June 3, 2005 and January 31, 2010, as Travel Consultants, Account Managers, Future Team Leaders, Team Leaders and Business Development Managers, or in any other job title or position whose primary duties were the sale of goods and services.

The settlement payment is available to everyone in the Class.

The Court has appointed seven former employees to be representatives for the class:  Leo Diapo, David Liberty, Matthew Catricola, Rick Jahshan, Jason Harrold, Judith Jacques and Karen Abe.  They are referred to as the Class Representatives or Representative Plaintiffs.

## THE SETTLEMENT BENEFITS – WHAT YOU GET

### 4.      How much is the overall settlement?

Flight Centre USA has agreed to pay one million eight hundred thousand dollars ($1,800,000) to be divided among class members who submit claim forms after deduction of attorneys' fees, costs, enhancement payments to the Class Representatives, and applicable taxes and withholding.

5.      **What amounts will be deducted from the settlement?**

The settlement payment will be used to pay class members, the class counsel and representatives, and all administration expenses.

6.      **How much will my payment be?**

Your individual share will be based on the number of weeks you worked and your job position during the Class Period.  85% of the settlement after deductions is being allocated to work weeks for Travel Consultants, Account Managers, Future Team Leaders, and those working in any other job title or position whose primary duties were the sale of goods and services.  15% of the settlement is being allocated to work weeks for Team Leaders and Business Development Managers.  These percentages are based on the number of employees and work weeks in each category, the wages earned, and varying legal defenses potentially applicable to the claims of each group.

The actual amount of money you receive will be based on the size of your individual share in comparison to the size of all class members' shares combined.  Your individual dates and positions are printed on your claim form. If that information is incorrect, please provide correct information, along with supporting documents, as instructed on the claim form.

7.      **How can I get a payment?**

In order to receive a payment, **you must sign and return the Claim Form** provided with this Notice by no later than _____.  By signing the Claim Form, you are agreeing to accept the settlement terms, and are releasing your claims against Flight Centre USA as set forth in question # 8 below in return for the settlement payment. **FLIGHT CENTRE USA WILL NOT RETALIATE AGAINST ANY PERSON WHO RECEIVES HIS OR HER SHARE OF THE SETTLEMENT.**

**If you move following receipt of this Notice**, or if the address to which this Notice was sent is not correct, you must immediately contact the Claims Administrator, whose address and contact information is as follows:

> \*\*\*\*\*\*\*\*\*\*\*\*\*
> \*\*\*\*\*\*\*\*\*\*\*\*\*
> \*\*\*\*\*\*\*\*\*\*\*\*\*
> 1-800-###-####

> ✓      **It is your responsibility to keep a current address on file with the Claims Administrator to ensure receipt of your settlement payment.**

You may contact the Claims Administrator at the toll-free number listed at the bottom of each page and/or send them a letter which provides your complete name, address, telephone number(s), and email address to ensure receipt of your settlement check.

8.      **What am I giving up to get a payment or stay in the Class?**

The release in this case is governed by the Settlement Agreement filed with the Court.  Unless you exclude yourself, you are staying in the class, which means that you can't sue, continue to sue, or be part of any other lawsuit against Defendants about the legal issues in this case.  It also means that all of the Court's orders will apply to you and legally bind you.

Specifically, according to the terms of the Settlement Agreement in this case which control the release of class claims, if you do not return a claim form, or if you sign and return a claim form to receive a payment, you will be deemed to have, and by operation of the Judgment shall have, fully, finally, and

forever released, relinquished and discharged all claims under state, federal or local law arising out of or related to allegations in the operative complaint of the Lawsuit, including but not limited to all claims for alleged violation of Labor Code sections 201-204, 221, 226, 226.7, 510, 2699-2699.5 and 2802; and Business and Professions Code section 17200 et seq. claims arising from such Labor Code violations, during the Class Period (June 3, 2005 until January 31, 2010) against Flight Centre USA, Inc. and each of its past or present directors, officers, employees, partners, principals, members, managers, agents, parent companies, subsidiaries, underwriters, issuers, insurers, co-insurers, reinsurers, controlling shareholders, any individual or entity that could be jointly liable with such person, any entity in which the person has a controlling interest, advisors, personal or legal representatives, predecessors, successors, parents, subsidiaries, divisions, joint ventures, assigns, spouses, heirs, associates, related or affiliated entities, any members of his/her/its immediate families, or any trust of which any person is the settlor, or which is for the benefit of any person and/or member(s) of his or her family.

### 9.    What if I do nothing?

If you do nothing, you will <u>not</u> receive any money under the settlement.  You will, however, continue to be a part of the Class, and will lose your right to sue Defendants as discussed in question 8 above.  To receive a payment, **you must sign and return your claim form by _____.**

### EXCLUDING YOURSELF FROM THE SETTLEMENT

### 10.    How do I get out of the settlement?

To exclude yourself from the settlement, you must send a letter in the mail saying that you want to be excluded from *Diapo et al. v. Flight Centre USA, Inc.*  Be sure to include your name, address, telephone number, and your signature.  You must mail your exclusion request postmarked by no later than _____, 2010 to:

> \*\*\*\*\*\*\*\*\*
> \*\*\*\*\*\*\*\*\*
> \*\*\*\*\*\*\*\*\*

If you ask to be excluded, you will not get any settlement payment and you cannot object to the settlement.  You will not be bound by anything that happens in this lawsuit.  You may be able to sue (or continue to sue) Defendants for the claims described above in the future.

### 11.    If I don't exclude myself, can I sue Flight Centre USA for the same thing later?

No.  Unless you exclude yourself, you give up any right to sue Flight Centre USA for the claims that this settlement resolves.  If you have a pending lawsuit against Flight Centre USA, speak to your lawyer in that case immediately.  You must exclude yourself from *this* lawsuit if you wish to pursue your own, separate lawsuit at your own expense.  Remember, the exclusion deadline is _____.

### 12.    If I exclude myself, can I get money from this settlement?

No.  If you exclude yourself, you will not receive any money from this settlement.

### THE LAWYERS REPRESENTING YOU

### 13.  Do I have a lawyer in this case?

The Court has appointed two law firms to represent you and the other Class Members.  These lawyers are called Class Counsel.  You will not be charged individually for these lawyers.  If you want to be represented by your own lawyer, you may hire one at your own expense.  The Class Counsel are:

| Michael von Loewenfeldt<br>Michael Ng<br>KERR & WAGSTAFFE LLP<br>100 Spear Street, Suite 1800<br>San Francisco, CA 94105-1528<br>(415) 371-8500<br>mng@kerrwagstaffe.com | Jerusalem F. Belgian<br>Chris L. Carnakis<br>BELGIAN LAW FIRM, LLP<br>20955 Pathfinder Road, Suite 100<br>Diamond Bar, CA 91765<br>(909) 843-6350<br>ccarnakis@gmail.com |
|---|---|

### 14.    How will the lawyers be paid?

Class Counsel will ask the Court to approve payment of up to $450,000 to them for attorneys fees, as well as reimbursement of approximately $95,000 in costs they actually spent (including the cost of this Notice and settlement administration), and payment of $5,000 to each class representative for their services as class representative. The fees would pay Class Counsel for investigating the facts, litigating the case, and negotiating the settlement. The Court may award less than these amounts.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you don't agree with the settlement or some part of it.

### 15.    How do I tell the Court that I don't agree with the terms of the settlement?

If you are a Class Member, and you do not exclude yourself from the Class, you may object to the settlement if you don't agree with its terms. You can give reasons why you think the Court should not approve it. The Court will consider your views. To object, you must send a letter stating the reasons that you object to the settlement in *Diapo et al. v. Flight Centre USA, Inc.*, Case No. CV 09-4790 PSG. Be sure to include your name, address, telephone number, your signature, and the reasons you object to the settlement. You can object personally, or through a lawyer you hire at your own expense. Mail the objection to these three different places postmarked by no later than _____.

| COURT | CLASS COUNSEL | DEFENSE COUNSEL |
|---|---|---|
| Clerk of the Court<br>United States District Court<br>255 East Temple Street<br>Los Angeles, CA 90012 | Michael von Loewenfeldt<br>Michael Ng<br>KERR & WAGSTAFFE LLP<br>100 Spear Street, Suite 1800<br>San Francisco, CA 94105-1528 | Elizabeth Staggs Wilson<br>LITTLER MENDELSON, PC<br>2049 Century Park East, 5th Floor<br>Los Angeles, CA 90067 |

### 16.    What if I agree with the settlement but the information on my Claim Form is wrong?

If you agree with the settlement, but you believe the dates or positions listed on the back of your Claim Form are wrong, you do **not** need to file an objection using the above procedure. Instead, simply write the correct dates on the back of the Claim Form along with any other facts necessary to understand why the information stated is wrong. If you have documents (such as paystubs) that support your corrections, please attach them too. Return the Claim Form and any attached materials by _____ and the Administrator will investigate to make sure your share of the settlement is correctly calculated. Remember to sign your Claim Form.

### 17.    What's the difference between objecting and excluding?

Objecting is simply telling the Court that you don't like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you exclude yourself, you cannot object because the case no longer affects you.

**18.      If I object, can I still submit a Claim Form and receive money from the settlement?**

Yes, if you object **and submit a claim form by ___** you will receive money from the settlement if the Court approves the settlement.  If you object, but do not submit a Claim Form, you will not receive any money from the settlement if the Court overrules your objection.

## THE COURT'S FAIRNESS HEARING

The Court will hold a hearing to determine whether the proposed settlement is fair and reasonable.

**18.      When and where will the Court decide whether to approve the settlement?**

The Court will hold a Fairness Hearing on _____ at _____ in Courtroom 880 of the United States District Court, located at 255 East Temple Street, Los Angeles, CA 90012.  After the hearing, the Court will decide whether to approve the settlement.  We do not know how long these decisions will take.

**19.      Do I have to come to the hearing?**

No.  Class Counsel will answer any questions the Judge may have.  But, you are welcome to come at your own expense.  If you send an objection, you don't have to come to Court to talk about it.  As long as you mailed your written objection on time, the Court will consider it.  You may also pay your own lawyer to attend.

**20.      May I speak at the hearing?**

Yes, but you need to let the Court and parties know in advance.  If you wish to speak at the hearing, or wish an attorney hired by you at your own expense to do so, you or your attorney must send a letter stating that it is your "Notice of Intention to Appear in *Diapo et al. v. Flight Centre USA, Inc., Case No. CV 09-4790 PSG*".  Be sure to include your name, address, telephone number, and your signature.  Your Notice of Intention to Appear must be postmarked no later than _____ and sent to all three addresses in question 15.  You cannot speak at the hearing if you excluded yourself.

## GETTING MORE INFORMATION

**21.      Are there more details about the settlement?**

This notice summarizes the proposed settlement.  More details are in the settlement agreement.  All court records in this litigation, including complete copies of the Class Action Settlement Agreement, may be examined during regular court hours at the office of the Clerk of the Court, United States District Court 255 East Temple Street, Los Angeles, CA 90012 or you may obtain copies of any of these documents at your own expense by contacting the Clerk of the Court.

**22.      Other questions regarding the settlement or this notice?**

If you have any questions about the proposed settlement or this Notice, you may contact the Claims Administrator at 1-800-###-####.

**23.      What happens if I move?**

It is important for the parties to have your current address in order to be able to send you other mailings regarding the lawsuit.  You should contact the Claims Administrator to report any change of your address after you receive this Notice.  Failure to report a change of address may result in you not receiving money from  the settlement.